State *v.* Burlingham.

THE STATE *vs.* CHARLES BURLINGHAM & *al.*

On the trial of an indictment against several for a conspiracy to charge a married woman with the crime of adultery, the wife of one of the persons indicted cannot be a witness.

It is too late to sustain a motion to quash an indictment after the accused has been arraigned and pleaded not guilty.

EXCEPTIONS from the Court of Common Pleas, PERHAM J. presiding.

This was an indictment against the respondents for a conspiracy to charge the wife of one of them with the crime of adultery. The facts in the case, and the ruling of the Judge at the trial, appear in the opinion of the Court. No copy of the motion to quash the indictment is found with the exceptions, but it was understood on the argument to be founded on the allegations. 1. That the wife of one of the parties was a witness before the grand jury. 2. That some of the persons indicted were themselves witnesses on the hearing before the grand jury.

*Rogers* and *J. Appleton* argued for the respondents.

1. They contended, that the wife of *Rines* was incompetent as a witness against either of the respondents. The general rule, that the wife cannot be a witness for or against the husband, either in civil or criminal cases, is clearly established. The only exceptions in criminal proceedings are cases of personal violence by the husband, or threats of the commission of it. And even in the excepted cases, the wife is admitted to testify only from the necessity of the case, and where there is no other evidence. *Rep. Temp. Hardwick,* 264; *White* v. *Holman,* 3 *Fairf.* 157; 5 *Esp. Rep.* 107; 1 *Vesey, Jr.* 49; 21 *Com. L. Rep.* 453; *Woodruff* v. *Woodruff,* 2 *Fairf.* 475; 2 *Stark. Ev.* 402, 411; 1 *Root,* 485; *Commonwealth* v. *Easland,* 1 *Mass. R.* 15; 1 *McCord,* 285; *Rosc. on Ev.* 113; 1 *Rogers,* 177; 1 *Phil. Ev.* 70.

2. The indictment should have been quashed, on the motion of the respondents, because illegal testimony was admitted before the grand-jury. The wife of one of the respondents was before the grand jury, and some of those were actually before the grand jury, against whom the bill was found. *Gilmore* v. *Bowden,* 3 *Fairf.*

State *v.* Burlingham.

412. 1 *Chitty on Cr. Law,* 84; 2 *Com. L. Rep.* 374; 12 *Wend.* 344; 1 *Phil. Ev.* 75; *Commonwealth* v. *Knapp,* 10 *Pick.* 491; 9 *Cowen,* 707; 1 *Hals.* 322; *Low's Case,* 4 *Greenl.* 439; 1 *Chitty's Cr. Law,* 318; 2 *Gall.* 367; *Russell & R. Cr. Cas.* 401; 25 *Com. L. Rep.* 297; 3 *Coke's Inst.* 26; 2 *Woodeson,* 559; 1 *Leach,* 514; 1 *Hawks' R.* 352; 2 *Hayw.* 840.

*Clifford,* Attorney General, for the State.

Humanity requires, that the wife should be admitted in this case to testify, as without her there can be no conviction. This is a conspiracy to convict her of a crime which would take away her liberty, and render her infamous. On principle then there is more reason for permitting her to testify, than where mere personal violence is threatened. It is a new case and should be decided on principle. There are no direct authorities, and those having an indirect bearing on the question are not uniform, but are on the whole rather in favor than opposed to the admission. Wherever the personal liberty of the wife is endangered, she may be a witness. *Soule's Case,* 5 *Greenl.* 407; 13 *East,* 171, *note; Rosc. Ev.* 114; 2 *Black. Com.* 209; 1 *East's P. C.* 454; 4 *Petersd. Ab.* 157; 2 *Yeates' R.* 114; 2 *Russell,* 605, and *notes;* 1 *Harr. Dig.* 750; 1 *Dallas,* 68; *Moulton, Lib.* v. *Moulton, Hancock* County, Supreme Judicial Court, *June* term, 1805.

2. It is a sufficient answer to the motion to quash the indictment, that it comes too late, after plea made. 5 *Carr. & P.* 530; 6 *Carr. and P.* 170; 1 *Leach,* 155; 1 *Cowper,* 331; *Commonwealth* v. *Knapp,* 10 *Pick.* 477; 4 *Hen. P. C.* 335. The motion should not have been granted, because it contemplated proving the facts by members of the grand jury. They are inadmissible for such purpose. 2 *Hals.* 347; *Rosc. on Ev.* 149; 2 *Stark. Ev.* 232, and *note* 1; 1 *T. R.* 1; *Taylor* v. *Greely,* 3 *Greenl.* 204; 1 *Wend.* 297. Nor if there had been legal evidence, and the motion had been made in season, it is no reason why a guilty man should escape punishment merely because he happened to be in before the grand jury. The prosecuting officer would not intentionally call such person to tell a story to clear himself, but it is novel law, that this should operate as a pardon to criminals.

The opinion of the Court was, after advisement, drawn up by

EMERY J. — This is an indictment against the defendants, for a conspiracy to charge one *Julia W. Rines*, the wife of *Stover Rines*, one of the defendants, with the crime of adultery. At the Court of Common Pleas, *January* term, 1837, *Charles Burlingham, John T. Howard, Stover Rines, William Turns* and *Mary Ann Rines* were found guilty by the jury, and *Sarah Lane* not guilty. A bill of exceptions has been allowed, by which we learn that on the trial before the jury, the attorney for the government offered *Julia W. Rines*, the wife of one of the defendants, as a witness, to whose introduction the defendants' counsel objected, but she was sworn, and testified to certain conversations with her husband in *August* and subsequently, and his own conduct towards her, and certain acts of the other defendants towards her. The presiding Judge ruled, that this testimony must be voluntary on her part, which it was, and confined to such facts as could not be proved by other witnesses.

It is very probable, that such an allegation as is made in this indictment would be likely to enlist the sympathies of most people in favor of the person, who was said to be the object of such a conspiracy. It is remarked by a recent elementary writer, *Walker*, in his introduction to *American Law*, pages 221, 222, 223, that the law of husband and wife is common law. That the whole theory is a slavish one compared even with the civil law. The merging of her name in that of her husband is emblematic of the fate of all her legal rights. The torch of hymen serves but to light the pile on which those rights are offered up. The legal theory is, that marriage makes the husband and wife one person, and that person is the husband, that there may be an indissoluble union of interest between the parties. On this ground, and to prevent connubial harmony and confidence from being disturbed, it is a general rule of law, that neither the husband nor wife can in any case, civil or criminal, be a witness for or against each other, with two exceptions growing out of the necessity of the case. This rule sometimes produces hardship, but on the whole is supposed to be salutary. One of the exceptions is, where the wife has acted as the agent of her husband in matters of business. The other, where she has received personal violence from him. *Bul. N. P.* 286 ; 1

*Hale,* 201. In these cases, and these only, if there be no other witness, she is permitted to testify.

It is said, that though this rule exist, it ought very readily to be made to yield to those cases which are exceptions to its application. *Fenner* v. *Lewis,* 10 *Johns. R.* 38.

But we apprehend that the rule has not in this State been made of a shifting character. It is true, that in 1805, in a hearing on a libel for divorce for impotence, the affidavit of the husband was received, at *Castine,* in the case of *Rufus Moulton* v. *Polly Moulton,* his wife. Yet it is believed, that in criminal prosecutions, the admissibility of the husband or wife must be confined to cases seeking security of the peace, and cases of personal violence. Where several were indicted for a conspiracy, *Ld. Ellenborough* refused to allow the wife of one of them to give evidence in favor of some of the others. And the reason was, that if all the others were acquitted, the husband would necessarily have been acquitted also; for the crime could not be committed by one alone. *Rex* v. *Locker & al.* 5 *Esp. R.* 107.

And by the same reason, in conspiracy, the wife of one of the defendants ought not to be allowed to give evidence against any of the others, as to any act done by him, in furtherance of the common design, more particularly, after evidence given connecting the husband with that defendant in the general conspiracy. And in this case, by reason of the admission of the said *Julia W. Rines,* as a witness on the trial, the verdict must be set aside and a new trial granted.

As to the motion to go into the enquiry respecting the manner of finding the indictment, we think the motion came too late, after the defendants had pleaded not guilty. The proceedings exhibited to us show, that on the ninth day the defendants, except *Sarah Lane,* who was acquitted, and does not now appear, pleaded *not guilty.*

With the full recollection of the case, *United States* v. *Coolidge,* 2 *Gall.* 367, in *Low's case,* 4 *Greenl.* 439, great care was taken before any plea was interposed, to proceed by way of motion in writing, under oath of the defendant, to the Court, alleging he ought not to be held to answer to the indictment, because it was not found by any twelve of the grand jury, but simply by a majority of the grand jury panel, and returned by the foreman under

State *v.* Burlingham.

a mistaken idea, that it was only necessary that a majority should agree to a bill of indictment.

We gather from the opinions of the members of the Court, that " when an indictment is once, verified by the attestation of the foreman of the grand jury, that it is a true bill, and as such has been presented to the court, and ordered to be put on file, it then becomes matter of record. There is, and always has been, and from the necessity of the case must be, a power in the court to va-' cate, or cause to be amended, a record which has been erroneously or falsely made, by inadvertence or otherwise, by any of its officers. It could only be in a very clear case ; where it could be made to appear manifestly and beyond every reasonable doubt, that an indictment, apparently legal and formal, had not in fact the sanctions which the law and the constitution require, that the court would sustain a motion to quash or dismiss it, upon a suggestion of this kind. That it is clear as well on principle as on authority, that the objection cannot be taken by way of formal plea. The very nature of the objection is prior in order to that of a plea, for it is an objection to being held to answer or plead in any form. The defendant prayed the court to enquire into the fact, at the first moment he had an opportunity to be heard in court. No laches were therefore imputable to him. He lost no right by neglecting to avail himself of it in due season."

This view of the importance of regularity of proceedings in criminal trials, we are disposed to maintain. The defendants were aware, that it is the duty of the foreman of the grand jury to leave with the clerk of the court a list of all witnesses sworn before them. Any one can discover what witnesses have been heard before that tribunal, which has very important rights, independent of the court,[*] though, to a certain extent, under the supervision of the court. And if defendants do not avail themselves of necessary preliminary measures, in season, before pleading to the merits, they are considered to have waived them. All we feel justified in doing is, to set the verdict aside and grant a new trial.

[*] In questions relating to bail, if a man be found guilty of murder by a grand jury, the court cannot take notice of their evidence, which they by their oath are bound to conceal. *Ld. Mohun's case,* 1 *Salk.* 104.