## BASSETT *v.* UNITED STATES.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 110. Argued December 10, 1890. — Decided December 22, 1890.

The original bill of exceptions in this case, signed by the trial judge, and also certified by the clerk of the trial court, was transmitted to the Supreme Court of the Territory of Utah, and was filed, together with the record of the case, in that court. *Held*, that its identification and authentication were perfect and were sufficient to bring the questions raised by the record within the jurisdiction of this court.

The wife of a married man is not a competent witness in Utah against her husband on trial under an indictment for polygamy.

On the 23d of November, 1886, the grand jury of the District Court for the First Judicial District of Utah Territory found an indictment for polygamy against the plaintiff in error, charging him with having married one Kate Smith, on the 14th day of August, 1884, when his lawful wife, Sarah Ann Williams, was still living and undivorced.

A motion was made to set aside and dismiss the indictment

on the ground that it had not been found and presented in the manner prescribed by law, because it had been found without any other evidence than that of the legal wife. This motion was overruled.

The accused pleaded not guilty and was tried by a jury, on the 6th day of January, 1887. He was convicted, and, on the same day, sentenced to be imprisoned in the penitentiary of Utah for five years and to pay a fine of five hundred dollars.

An appeal was taken to the Supreme Court of Utah Territory where the judgment of the District Court was affirmed. The defendant sued out this writ of error.

The plaintiff in error made in this court several assignments of error. Only the following was considered in the opinion.

"*First:* The District Court erred in permitting Mrs. Sarah Bassett, the former legal wife of the plaintiff in error, against his objection, to testify to a confidential communication made to her by him, while they were husband and wife, and not in the presence of any other person."

The Attorney General on the part of the government, contended that there was no competent bill of exceptions. The ground for this objection is stated in the opinion of the court.

*Mr. Franklin S. Richards* for plaintiff in error. *Mr. Charles C. Richards* was with him on the brief.

*Mr. Attorney General* for defendants in error.

If the bill of exceptions is to be regarded as in the record, it is necessary to consider the questions made in the brief for plaintiff in error.

It is insisted that there is no evidence in this case of the second marriage, except the confession of the defendant, and that such confession uncorroborated is insufficient. In the first place, this statement made by Bassett to his wife was not "a confession" within the meaning of the law. He stated that he had married a second wife, but he did not state or admit that he had committed a crime. This question seems

to be covered by the decision in *The State* v. *Crowder*, 41 Kansas, 110, 111. But, as a matter of fact, this confession has corroboration in the evidence. And it is not the rule that a prisoner will not be convicted upon a confession without corroborative evidence. In *Hopt* v. *Utah*, 110 U. S. 574, 584, this court gives its sanction to the statement that "a confession, if freely and voluntarily made, is evidence of the most satisfactory character. Such a confession, said Eyre, C. B., 1 Leach, 263, 'is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and, therefore, it is admitted as proof of the crime to which it refers.' Elementary writers of authority concur in saying that while from the very nature of such evidence it must be subjected to careful scrutiny and received with great caution, a deliberate, voluntary confession of guilt is among the most effectual proofs in the law, and constitutes the strongest evidence against the party making it that can be given of the facts stated in such confession."

The decision in *Bergen* v. *People*, 17 Illinois, 436, *S. C.* 65 Am. Dec. 672, cited and relied on by plaintiff in error, states that the corroborative circumstances need not go to the proof of the *corpus delicti*, but may be sufficient if they are corroborative of any part of the testimony. It is also stated in the same case that the text-books generally say that a confession alone is sufficient.

The main question argued on the other side, is whether the plaintiff's first wife was a competent witness to the matters of which she testified. It is beyond question that, unless the common law rule is changed by the statute of Utah, this testimony was incompetent. The material matter to which she testified was a conversation between her husband and herself while the relation of husband and wife existed, in the absence of any third person except a little child, in which the husband admitted that he had married the second time; in other words, had committed the crime against which this prosecution is directed. It was claimed on behalf of the Government that section 1156 of the code of civil procedure of Utah embodies the law determinative of this question. That

section is as follows: " A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor can either, during the marriage or after, without the consent of the other, be examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or a proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

It was insisted that under the last clause of that section the wife was a competent witness. It was also insisted, as it is insisted in the opinion of Chief Justice Zane, that the crime under prosecution was a crime not merely against the people of Utah, but in the sense of the statute was a crime committed against the wife; and that, therefore, for her own protection she must be permitted to testify. The decisions cited, in the opinion of the Chief Justice, from the Supreme Court of Iowa and the Supreme Court of Nebraska, directly support this position: *State* v. *Sloan*, 55 Iowa, 217; *State* v. *Hughes*, 58 Iowa, 165; *State* v. *Bennet*, 31 Iowa, 24; *Lord* v. *State*, 17 Nebraska, 526.

There seems to be much force and sound reason in this doctrine. Certainly no man can commit a greater wrong upon his wife than in acts of this character. Such an act is a much greater outrage upon any right thinking woman than a blow, or almost any sort of abuse.

On the other hand, plaintiff in error insists that in arriving at the law of Utah upon this question, section 1156 of the Civil Code must not be considered alone, but in connection with section 421, Criminal Code, which is in the following language: "Except with the consent of both, or in cases of criminal violence upon one by the other, neither husband nor wife are competent witnesses for or against each other in a criminal action or proceeding to which one or both are parties."

Section 1156 is the later enactment. It seems to cover the whole subject matter. True, it is found in the Civil Code, but it is in express terms made applicable to criminal actions and covers the whole subject matter. The change from the

language of section 421, substituting "criminal action" for "criminal violence" seems to have been with the purpose and to sanction the view, entertained by the Supreme Court of Utah, that the law was intended to cover cases in which the crime was committed against the wife, not involving the elements of violence. To hold otherwise, it is necessary to make so much of section 1156 as applies to criminal cases meaningless and without effect as against the provisions of section 421. We are not at liberty to give it such a construction. Being the later act, and the subject matter being within the competency of the legislature, it must be assumed that the substitution of "criminal action" for "criminal violence" was intentional, and give it effect accordingly,

The rule as found in § 421 was the rule of the common law, and § 1156 designed to and did change that rule. It seems to me clear, therefore, that the wife was a competent witness to give testimony against the husband in this action.

A more difficult question, however, is presented by the fact that her testimony in this case was as to a communication made by him to her pending their marital relations and in the absence of any third person. The question is whether the language of section 1156 is sufficiently broad to cover testimony as to such a communication. If given full scope and its widest meaning, it undoubtedly is; for the limitation is not as to the character of the testimony, but as to the character of the action; and, as we have already seen, the character of the action described in the statute seems to be fully met by the facts in this case. And not only is the action such an one as to be within the exception of this statute, but the communication itself is strictly within the language of the exception.

The general provision of the section is that "neither husband nor wife shall be examined as to *any* communication made by one to the other during the marriage." Then follows the exception: "But this exception does not apply . . . to a criminal action or proceeding for a crime committed by one against the other."

It is not merely that each is permitted to be a witness, but according to the language of this section each is permitted to

testify to "any communication" made by the one to the other during the marriage. As already said, the language seems clearly to cover and justify, not merely ordinary testimony by one against the other, but "any communication made by one to the other."

At the same time it must be conceded that confidential communications under the law of evidence have stood upon a rule peculiar to themselves. The question is whether the statute making the husband and wife competent witnesses against each other, and authorizing them to testify as to "any communication" between them during the marriage relations, covers confidential communications.

I ask that a careful examination be given to the discussion of this question in the opinion of Chief Justice Zane. The decision of this court in the case of the *Connecticut Mutual Life Insurance Company* v. *Schaefer*, 94 U. S. 457, may be worthy of consideration in this connection.

MR. JUSTICE BREWER delivered the opinion of the court.

On November 23, 1886, the grand jury of the First Judicial District Court of Utah found an indictment for polygamy against the plaintiff in error, charging him with having married one Kate Smith on the 14th day of August, 1884, when his lawful wife, Sarah Ann Williams, was still living and undivorced. Upon trial before a jury a verdict of guilty was returned, and he was sentenced to imprisonment for a term of five years and to pay a fine of five hundred dollars. Such sentence, on appeal, was affirmed by the Supreme Court of the Territory, and is now brought to this court for review.

A preliminary question is presented by the Attorney General. It is urged that there was no proper bill of exceptions as to the proceedings in the trial court, and therefore nothing is presented which this court can review. But we are reviewing the judgment of the Supreme Court of the Territory; and the rule in this court is not to consider questions other than those of jurisdiction, which were not presented to the court whose judgment we are asked to examine. *Clark* v. *Freder-*

*icks,* 105 U. S. 4. Beyond the fact that the proceedings of the trial court were examined and considered by the Supreme Court of the Territory, and are, therefore, presumably reviewable by this court, is this matter, noticed by this court in the case of *Hopt* v. *Utah,* 114 U. S. 488, that a large liberty of review is given by the statutes of Utah to the Supreme Court of the Territory, even in the absence of a formal bill of exceptions. See also *Stringfellow* v. *Cain,* 99 U. S. 610; *O'Reilly* v. *Campbell,* 116 U. S. 418.

But it is unnecessary to rest upon this recognition by the Supreme Court of the Territory, or the presumptions arising therefrom. The record shows the pleadings, proceedings and exceptions to the charge of the trial judge, all certified properly by T. A. Perkins, the clerk of the trial court. At the close of his certificate, which is of date January 20, 1887, is this statement: " And I further certify that a copy of defendant's bill of exceptions in said cause is not made part hereof because said bill of exceptions is in the possession of defendant's counsel, at the City of Salt Lake, and because I am informed by said counsel that it has been stipulated by and between themselves and the United States district attorney for Utah Territory that the original thereof in place of such copy should be used in the Supreme Court upon this appeal." The bill of exceptions referred to by him in this statement is signed by the trial judge and thus endorsed : " No. 984. First Dist. Court, Utah. *The United States* v. *William E. Bassett.* Polygamy. Bill of exceptions. Filed Jan'y 19th, 1887. T. A. Perkins, clerk "; and also by the clerk of the Supreme Court of the Territory as " Filed Feb'y 2nd, 1887," the date of the filing of the transcript of the proceedings of the trial court. The import of all this is that the bill of exceptions signed by the trial judge was filed in the trial court; and that, for the purposes of economy, time and convenience such original bill, together with the record of the proceedings, was brought to and filed in the Supreme Court after having been filed in the trial court. It needs but this suggestion, that if a copy is good the original is equally good. The identification of such bill of exceptions is perfect, vouched by the sig-

natures of the trial judge, the clerk of the District Court, and the clerk of the Supreme Court. To ignore such authentication would place this court in the attitude of resting on a mere technicality to avoid an inquiry into the substantial rights of a party, as considered and determined by both the trial court and the Supreme Court of the Territory. In the absence of a statute or special rule of law compelling such a practice, we decline to adopt it.

Passing from this question of practice to the merits, the principal question, and the only one we deem necessary to consider, is this: The wife of the defendant .was called as a witness for the prosecution, and permitted to testify as to confessions made by him to her in respect to the crime charged, and her testimony was the only direct evidence against him. This testimony was admitted under the first paragraph of section 1156 of the Code of Civil Procedure, enacted in 1884, section 3878 of the Compiled Laws of Utah, 1888, which reads: " A husband cannot be examined for or against his wife, without her consent, nor a wife for or against her husband, without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other." And the contention is, that polygamy is within the language of that paragraph a crime committed by the husband against the wife. We think this ruling erroneous. A technical argument against it is this: The section is found in the Code of Civil Procedure, and its provisions should not be held to determine the competency of witnesses in criminal cases, especially when there is a Code of Criminal Procedure, which contains sections prescribing the conditions of competency. Section 421 of the Code of Criminal Procedure, section 5197 of the Compiled Laws, 1888, is as follows: " Except with the consent of both, or in cases of criminal violence upon one by the other, neither husband nor wife are competent witnesses for or against each other, in a criminal action or proceeding to

which one or both are parties." Clearly under that section the wife was not a competent witness. It is true that the Code of Criminal Procedure was enacted in 1878, and the Code of Civil Procedure in 1884, so that the latter is the last expression of the legislative will; but a not unreasonable construction is, that the last clause of this paragraph was inserted simply to prevent the rule stated in the first clause from being held to apply to the cases stated in the last, leaving the rule controlling in criminal cases to be determined by the already enacted section in the Code of Criminal Procedure. This construction finds support in the fact that the same legislature which enacted the Code of Civil Procedure passed an act amending various sections in the Code of Criminal Procedure, among them the section following section 421, quoted above, and did not in terms amend such section, (Laws of Utah, 1884, chapter 48, page 119); and in the further fact that the same legislature passed an act for criminal procedure in justices' courts, and in that prescribed the same rule of competency, and in the same language as is found in section 421, (Laws of Utah, 1884, chapter 54, section 100, page 153). It can hardly be believed that the legislature would establish one rule of competency for a trial in a justices' court, and a different rule for a trial of the same offence on an appeal to the District Court. And there are many offences of which justices' courts have jurisdiction, which are like polygamy in their social immorality and their wrong to the wife.

But we do not rest our conclusion on this technical argument. If there were but a single section in force, and that the one found in the Code of Civil Procedure we should hold the testimony of the wife incompetent. We agree with the Supreme Court of California, when, in speaking of their codes, which in respect to these sections are identical with those of Utah, it says in *People* v. *Langtree*, 64 California, 256, 259, " we think upon a fair construction both mean the same thing, although the Penal Code is more explicit than the other. On this, as on nearly every other subject to which the codes relate, they are simply declaratory of what the law would be if there were no codes." See also *People* v. *Mullings*, 83 California, 138.

It was a well-known rule of the common law that neither husband nor wife was a competent witness in a criminal action against the other, except in cases of personal violence, the one upon the other, in which the necessities of justice compelled a relaxation of the rule. We are aware that language similar to this has been presented to the Supreme Courts of several States for consideration. Some, as in Iowa and Nebraska, hold that a new rule is thereby established, and that the wife is a competent witness against her husband in a criminal prosecution for bigamy or adultery, on the ground that those are crimes specially against her. *State* v. *Sloan,* 55 Iowa, 217; *Lord* v. *State,* 17 Nebraska, 526. While others, as in Minnesota and Texas, hold that by these words no departure from the common law rule is intended. *State* v. *Armstrong,* 4 Minnesota, 251; *Compton* v. *State,* 13 Texas App. 271, 274; *Overton* v. *State,* 43 Texas, 616. This precise question has never been before this court, but the common law rule has been noticed and commended, in *Stein* v. *Bowman,* 13 Pet. 209, 222, in which Mr. Justice McLean used this language: "It is, however, admitted in all the cases that the wife is not competent, except in cases of violence upon her person, directly to criminate her husband, or to disclose that which she has learned from him in their confidential intercourse." "This rule is founded upon the deepest and soundest principles of our nature, principles which have grown out of those domestic relations that constitute the basis of civil society, and which are essential to the enjoyment of that confidence which should subsist between those who are connected by the nearest and dearest relations of life. To break down and impair the great principles which protect the sanctities of husband and wife, would be to destroy the best solace of human existence." We do not doubt the power of the legislature to change this ancient and well-supported rule; but an intention to make such a change should not lightly be imputed. It cannot be assumed that it is indifferent to sacred things, or that it means to lower the holy relations of husband and wife to the material plane of simple contract. So, before any departure from the rule affirmed through the ages of the

common law, — a rule having its solid foundation in the best interests of society, — can be adjudged, the language declaring the legislative will should be so clear as to prevent doubt as to its intent and limit. When a code is adopted, the understanding is that such code is a declaration of established law, rather than an enactment of new and different rules. This is the idea of a code, except as to matters of procedure and jurisdiction which often ignore the past, and require affirmative description.

We conclude, therefore, that the section quoted from the Code of Civil Procedure, if applicable to, a criminal case, should not be adjudged as working a departure from the old and established rule, unless its language imperatively demands such construction. Does it? The clause in the Civil Code is negative, and declares that the exception of the incompetency of wife or husband as a witness against the other does not, apply to a criminal action or proceeding for a crime committed by one against the other. Is polygamy such a crime against the wife? That it is no wrong upon her person is conceded ; and the common law exception to the silence upon the lips of husband and wife was only broken, as we have noticed, in cases of assault of one upon the other. That it is humiliation and outrage to her is evident. If that is the test, what limit is imposed? Is the wife not humiliated, is not her respect and love for her husband outraged and betrayed, when he forgets his integrity as a man and violates any human or divine enactment? Is she less sensitive, is she less humiliated, when he commits murder, or robbery, or forgery, than when he commits polygamy or adultery? A true wife feels keenly any wrong of her husband, and her loyalty and reverence are wounded and humiliated by such conduct. But the question presented by this statute is not how much she feels or suffers, but whether the crime is one against her. Polygamy and adultery may be crimes which involve disloyalty to the marital relation, but they are rather crimes against such relation than against the wife ; and, as the statute speaks of crimes against her, it is simply an affirmation of the old familiar and just common law·rule. We conclude,

therefore, that under this statute the wife was an incompetent witness as against her husband.

Other questions in the record need not be considered, as they will probably not arise on a new trial.

*The judgment of the Supreme Court of the Territory of Utah is reversed, and the case remanded, with instructions to order a new trial.*