## UNITED STATES OF AMERICA *v.* LELOHA KUKILANI AND MAGGIE PERREIRA.

### May 2, 1916.

1. *Evidence—Husband and wife—Competency as witnesses against co-defendants of each other in criminal cases:* The Act of March 3, 1887, 24 Stat. 635, sec. 1 (Edmunds-Tucker Act) removing the incompetency of husband and wife as witnesses as against each other in certain cases, does not apply to indictment for adultery, even as against a paramour of the witness' spouse on the trial of both offenders under a joint indictment.

2. *Same—Same—Same—Testimony as to marriage:* The husband of a female defendant in a case of adultery is not a competent witness to prove her marriage.

*Indictment:* On objection to testimony.

*C. S. Davis* for defendants.

*H. W. Vaughan,* U. S. District Attorney, and *S. B. Kemp,* Assistant U. S. Attorney, for the United States.

CLEMONS, J.   In this prosecution, under one indictment, of the alleged participants in adultery, the government offers as a witness the husband of the female defendant, to prove marriage,—not as against the wife, however, but only as against the other defendant, her alleged paramour.

The attorney for the defense objects on the ground that the incompetency of one spouse to testify against the other under the common law and under the Revised Laws of Hawaii, 1915, sec. 2613, renders such testimony as is here offered inadmissible, so long as the other spouse remains one of the defendants in the case.

The district attorney makes four points in reply:

[1] The first is, that the United States is not bound by the rules of evidence laid down by the Revised Laws of Hawaii, particularly by section 2613, above cited.

This may be true (without now undertaking to decide), but in any event it will be noted that the provision of the Revised Laws does not change the common-law. To say, as the local statute does, that husband and wife shall be incompetent, "except in such cases where such evidence may now be given," is to make no change at all. And what the common-law is, as viewed by the Supreme Court of the United States, will presently be seen.

The government's next point is, that there is an exception to the common-law incompetency of husband and wife to testify against the other spouse where as here, the act complained of is an injury to, or an act "against" the witness,—that, for example, assault and battery is one of the exceptions and so also is the assault upon the injured spouse's feelings involved in the offense of adultery.

The sufficient answer to this is, that the Supreme Court, by which right or wrong we are bound, holds otherwise in the case of *Bassett v. United States*, 137 U. S. 496, 505, 506. The cases, cited by the district attorney, of *Cohen v. United States*, 214 Fed. 23; *United States v. Gwynne*, 209 Fed. 993; and *United States v. Rissoli*, 189 Fed. 271, may, therefore, be disregarded. As supporting the *Bassett* case, see 5 Chamb. Ev., sec. 3659 and notes 2-5; 30 A. & E. Enc. L., 2d ed., 954; *State v. Gardner*, 1 Root (Conn.) 485; *State v. Welch*, 26 Me. 30; *Groves v. Harris*, 117 Ga. 817, 45 S. E. 239; *Com. v. Sparks*, 7 Allen 534; *People v. Fowler*, 104 Mich. 449, 62 N. W. 572; *State v. Wilson*, 31 N. J. Law, 77, 81.

The next contention is, that, in any event, the Federal Statute, 24 Stats. 635, sec. 1, 1 Fed. Stat. Ann., 708, removes the common-law incompetency of one spouse to testify against the other. But it does not, except in the expressed cases of bigamy, polygamy, and unlawful cohabitation, which are specific, narrow offenses, not broad enough to include adultery or fornication, the latter being merely unlawful sexual intercourse, while the former are something more than that, if indeed they may be held to necessarily imply sexual intercourse at all.

Light is thrown on the matter by the history of the Edmunds-Tucker Act, of which this provision of March 3, 1887, is a part (by amendment of the original Edmunds Act, of March 22, 1882, 22 Stats. 30). See *United States v. Baum*, 74 Fed. 43, 44; also 8 Enc. Britannica, 11 ed., 949, tit. "Edmunds". The evident intent of the provision was to facilitate proof against polygamy, the whole act being mainly directed against flagrant conditions in the Territory of Utah in the eighties. Mere unlawful sexual intercourse was not aimed at, or the words adultery and fornication would have been added to the list. *Expressio unius exclusio alterius.* It is significant that although this amending act in subsequent sections provides penalties for the offenses of adultery

and fornication as well as those of bigamy, polygamy, and unlawful cohabitation which were provided for in the amended act, the former are omitted from section 1.

But, says the district attorney, unlawful cohabitation is as a matter of fact broad enough to include adultery. Not so; the accepted definitions, the etymology of the word "cohabitation," are against his contention. Though unlawful cohabitation does in most cases involve either fornication or adultery, it is itself neither one, its gist is the living together of a man and woman as husband and wife when they are not so, a violation of the strict laws relating to marriage,—an offense against public policy, which sets certain formalities and requirements as conditions precedent to lawful marriage. *United States v. Myers,* 99 Pac. 336 (New Mex.), and see dissent, 337.

Now, the only unlawful cohabitation to which section 2 could apply would be unlawful cohabitation in which one of the parties was already married, for the words of the section "husband" and "wife" apply expressly to the parties to a valid marriage; and besides there was never any privilege or testimonial incompetency in favor of any but those who were lawfully married. See 4 Wig. Ev., secs. 2230, 2231; Wig. Code Ev., sec. 1711. So that this section in addition to applying to those who have two spouses (bigamy) or three or more (polygamy), is intended to apply also, and, as the other and only other class, to those who having one spouse attempt to hold out to the world another as his or her own lawful spouse (embraced within unlawful cohabitation, an offense already defined by law before the amending act of 1887: 22 Stat. 31, sec. 3, 1 Fed. Stat. Ann., 706). Section 1 thus covered all possible cases of polygamy or attempted polygamy, and covered only polygamy as distinguished from mere unlawful sexual intercourse.

The fact, in the case now on trial, that there is testimony tending, if true, to show a living together, a holding out to the world of these defendants as husband and wife,

is only a circumstance of the alleged adultery, circumstantial evidence tending to show adultery; but such cohabitation is not the offense charged, nor the gist of the offense charged,—the offense on which the government has elected to try these defendants.

The district attorney's interpretation of the words "the lawful husband or wife of the person accused shall be a competent witness and may be called but shall not be compelled to testify . . . without the consent of the husand or wife, as the case may be," to-wit, that the spouse is competent, except that the spouse if reluctant to testify may be compelled to do so on the consent of the other spouse on trial, is clear and seems to be sound in cases to which section 1 applies,—but the section does not apply to adultery.

Finally, and to my mind the government's strongest point, the court is urged to consider that the testimony of the husband of the female defendant is offered not at all as against her but only as against her paramour, the male defendant, and that the court's proper instruction to the jury to that effect, will remove any difficulty.

Though evidence may be received as admissible as against only one of two joint defendants, and the jury instructed to disregard it as against the other: see *Com. v. Miller*, 150 Mass. 69, 70; *Com. v. Bingham*, 150 Mass. 69, 70; *Com. v. Bingham*, 158 Mass. 169, 171; · yet "where it can be anticipated at the outset that there will be such evidence, the court will, sometimes, in exceptional cases, and in the exercise of its discretion, grant separate trials", *Com. v. Miller*, supra; and so here it seems that in such an exceptional case as this in which the defendant spouse is entitled to the protection afforded to "the marital relation" under the ruling in the *Bassett* case,—i. e., so long as there is any rule at all of incompetency in adultery cases,—the rule should be so enforced as to afford the complete immunity contemplated by the reason of the rule in that dominant case. Thus, in

*McLean v. Barnett,* 32 Tex. Cr. App., 521, 24 S. W. 898, in which the fact appears that, although the "proof was offered only against the defendant Kate McLean" under a joint indictment for adultery, and although "the court instructed the jury that they would not consider the same as to the defendant Elias Barnett," Id., 523, yet the appellate court said: "The testimony was as to the acts of adultery as between the parties. It would have been impossible for a reasonable mind to have obeyed the instruction of the court. The error could not be cured by such an instruction." Id., 524. *Morrill v. State,* 5 Tex. App. 447, an earlier case, is cited in our case at bar as tending to the contrary. As supporting the view of the later Texas case of *McLean v. Barnett,* supra, are, however: *Com. v. Gordon,* 2 Brewst. (Pa. Com. Pleas), 569-570; *Com. v. Easland,* 1 Mass. 15 (and see *Com. v. Robinson,* 1 Gray, 555, 560; *Com. v. Sparks,* 7 Allen, 534); *State v. Jolly,* 3 Dev. & B. (No. Car.), 110, 32 Am. Dec. 656, 659-660; *Republic v. Kahakauila and Kilikina Hake,* 10 Haw. 28; *Cotton v. State,* 62 Ala. 12; *Reg. v. Brittleton,* 12 Q. B. D. 266, Coleridge, C. J., Hawkins, Lopes, and Mathew, JJ., Stephen, J., concurring but doubting, but the separate opinions being barren of discussion, the court not having had "the assistance of the argument of counsel," and the Chief Justice not being able to say that the matter is "free from doubt"; *State v. Burlingham,* 15 Me. 104, 106-107; 4 Wig. Ev., sec. 2236, and n. 1; 30 A. & E. Enc. L., 2d ed., 953-954; 40 Cyc., 2216, par. (7).

The practical difficulty emphasized in the *McLean* case, supra, of making the jury maintain the distinction between testimony to be used against one party and testimony to be used only against the other, tends to support the reasonableness of the defendant's position, though, in ordinary cases, we may recognize the principle of the two Massachusetts decisions first above cited.

See also 1 Enc. Pl. & Pr. 308, and Iowa cases cited, to the effect that though in adultery cases "the parties may

be jointly indicted, . . . the better practice is to indict the parties separately;" also 2 McClain, Cr. Law, sec. 1095. Such policy may lend some support to the defendant's contention. And see 4 Wig. Ev., sec. 2236, and notes 1-6.

There is in the books no very satisfactory discussion of the questions here involved; and there is a very apparent dissatisfaction with the rule that made a wife competent to testify where her husband had injured her by physical violence, yet regarded her as incompetent where her husband had broken her heart by marital infidelity: 4 Wig. Ev., sec. 2228, 2234, 2239, (at p. 3060), 2245; 5 Chamb. Ev., sec. 3660; but a district judge cannot overrule the Supreme Court and its decision in the *Bassett* case, though our own Circuit Court of Appeals in the case of *Cohen,* supra, 214 Fed. 29, par. 7, may seem to have been for the time unconscious of its superior court's ruling.

The court sustains the objection to the proffered testimony.

Since giving this decision the court has recalled two unpublished rulings of Judge Dole which are of such special interest in this connection as to justify reference to them here: The ruling of Judge Dole, made December 17, 1907, in *United States v. T. S. Choy and No Sang Bong* (No. 344), allowing the husband to testify to marriage in a case in which the wife was jointly indicted with her paramour, was reversed by that judge, November 17, 1908, in *United States v. Teno and Diki Nomura* (No. 470.)