UNITED STATES, Appellee

v.

Jason L. TAYLOR, Sergeant
U.S. Marine Corps, Appellant

No. 06-0319

Crim. App. No. 200202366

United States Court of Appeals for the Armed Forces

Argued January 8, 2007

Decided April 5, 2007

STUCKY, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN and BAKER, JJ., joined.  RYAN, J., filed a
dissenting opinion.


<u>Counsel</u>


For Appellant:  Lieutenant <u>Brian L. Mizer</u>, JAGC, USN (argued).

For Appellee: Captain <u>James W. Weirick</u>, USMC (argued); <u>Commander
P. C. LeBlanc</u>, JAGC, USN, and <u>Lieutenant Craig A. Poulson</u>, JAGC,
USNR (on brief); <u>Colonel R. F. Miller</u>, USMC, and <u>Lieutenant
Steven M. Crass</u>, JAGC, USNR.



Military Judges:  M. H. Sitler and P. H. McConnell



<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**</u>

Judge STUCKY delivered the opinion of the Court.

We granted review to consider whether an accused may invoke the spousal confidential communications privilege and thereby prevent his wife from testifying to his admission to committing adultery. We hold that that he may not and affirm the court below.

I.

Appellant, who was then stationed at Camp Lejeune, North Carolina, married DN in August 1999. In November of that year, DN returned to Idaho to finish high school. Soon after she left, Appellant met a fifteen-year-old girl, AM. AM lived in a trailer park where Appellant visited friends.

Appellant and AM developed a romantic and sexual relationship. They engaged in sexual intercourse approximately forty times, in several locations, between November 1999 and early 2000. Throughout the affair, she knew he was married and that his wife was in Idaho. She told him she was fifteen years old.

In April 2000, DN returned from Idaho. After experiencing marital difficulties, she confronted Appellant on Christmas Day 2000. He first denied, but then confessed to his affair with AM. He told DN that he had made a mistake, but loved her and wanted to salvage their marriage.

<u>United States v. Taylor</u>, No. 06-0319/MC

At his special court-martial, Appellant filed a motion in limine, asserting the marital communication privilege over this conversation.  The military judge denied the motion, ruling that adultery was an offense against the spouse within the meaning of Military Rule of Evidence (M.R.E.) 504(c)(2)(A) and, therefore, Appellant could not prevent his wife from testifying to the contents of the conversation.

Contrary to his pleas, the military judge convicted Appellant of one specification of carnal knowledge, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2000), and one specification of adultery, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000). Appellant was acquitted of one specification of sodomy with a child under the age of sixteen, and one specification of sodomy. Article 125, UCMJ, 10 U.S.C. § 925 (2000).  The sentence adjudged by the court-martial, and approved by the convening authority, consisted of a bad-conduct discharge, confinement for four months, forfeiture of $600 pay per month for four months, and reduction to the lowest enlisted grade.  The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence.  <u>United States v. Taylor</u>, 62 M.J. 636 (N-M. Ct. Crim. App. 2006).

II.

M.R.E. 504 sets out the marital privileges applicable to trials by courts-martial. With respect to the privilege of confidential communications made during the marriage, it provides as follows: "A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law." M.R.E. 504(b)(1). However, the privilege does not apply:

> In proceedings in which one spouse is charged with a crime against the person or property of the other spouse or a child of either, or with a crime against the person or property of a third person committed in the course of committing a crime against the other spouse.

M.R.E. 504(c)(2)(A).

Appellant asserts that adultery is not "a crime against the person or property" of his wife and that therefore, the military judge erred by permitting her to testify over his objection. The Military Rules of Evidence do not define the term "a crime against the person or property of the other spouse." Appellant implores this Court to confirm that "the proper approach to consideration of whether an offense charged against one spouse injures the other depends not upon the outrage to her sensibilities or a violation of the marital bonds, but upon some

direct connection with her person or property." United States v. Massey, 15 C.M.A. 274, 282, 35 C.M.R. 246, 254 (1965). Whether adultery is "a crime against the person . . . of the other spouse" is a question of law we review de novo. See United States v. McCollum, 58 M.J. 323, 340 (C.A.A.F. 2003) (deciding whether the term "child of either" under M.R.E. 504(c)(2)(A) should be construed to include a de facto child).

### III.

Historically, the marital privilege involved two distinct concepts:  one related to the capacity (often referred to as the competency or disability) of one spouse to testify against the other, while the other concerned confidential communications made between husband and wife during the marriage.  2 Stephen A. Saltzburg et al., Military Rules of Evidence Manual § 504.02 (6th ed. 2006).  Although we are concerned with the confidential communications privilege in this case, the history of the two concepts is so intertwined as to require a discussion of both.

At common law, neither husband nor wife was competent to testify against the other.  1 Kenneth S. Broun et al., McCormick on Evidence § 66, at 318 (6th ed. 2006); 2 John Henry Wigmore, Evidence in Trials at Common Law, §§ 600-601 (Chadbourn rev. 1979).

> This spousal disqualification sprang from two canons
> of medieval jurisprudence:  first, the rule that an
> accused was not permitted to testify in his own behalf

> because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one.  From those two now long-abandoned doctrines, it followed that what was inadmissible from the lips of the defendant-husband was also inadmissible from his wife.

Trammel v. United States, 445 U.S. 40, 44 (1980).

The spousal disqualification rule "always recognized certain exceptions founded on a supposed necessity, i.e., the presumed impossibility, in specifically defined situations, of obtaining other witnesses."  2 Wigmore, supra, § 612 (citation omitted).  Such an exception to spousal disqualification was made in both the common law and American military law for cases in which the trial was for bodily injury or violence inflicted by one spouse on the other.  1 Broun et al., supra, § 66, at 319; William Winthrop, Military Law and Precedents 335 (2d ed. 1920 reprint).

In 1951, the President promulgated a new Manual for Courts-Martial to reflect the changes to military justice resulting from the enactment in 1950 of the Uniform Code of Military Justice, 10 U.S.C. §§ 800-940 (1950).  Manual for Courts-Martial, United States (1951 ed.) (1951 MCM).  Article 36(a), UCMJ, granted the President the authority to prescribe trial procedures, "including modes of proof, . . . which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal

6

cases in the United States district courts."  10 U.S.C. § 836(a)

(emphasis added).

In the 1951 Manual, the first governing all of the armed

services, the President included a chapter entitled "Rules of

Evidence."  1951 MCM chap. XXVII.  It was more akin to a

treatise than specific rules of evidence.  He adopted the

following regarding the competency of spouses to testify:

> Husband and wife are competent witnesses in favor of
> each other.  Although husband and wife are also
> competent witnesses against each other, the general
> rule is that both are entitled to a privilege
> prohibiting the use of one of them as a witness (sworn
> or unsworn) against the other.  This privilege does
> not exist, however, when the husband or wife is the
> individual or one of the individuals injured by the
> offense with which the other spouse is charged, as in
> a prosecution for an assault upon one spouse by the
> other, for bigamy, polygamy, unlawful cohabitation,
> abandonment of wife or children or failure to support
> them, for using or transporting the wife for "white
> slave" or other immoral purposes, or for forgery by
> one spouse of the signature of the other to a writing
> when the writing would, if genuine, apparently operate
> to the prejudice of such other.

1951 MCM chap. XXVII, para. 148.e., at 277.  The drafters of the

Manual intended that, under this provision, the spouse of an

accused could be compelled to testify "if he or she [was] the

victim of the transgression with which the other spouse is

charged."  Charles L. Decker et al., Legal and Legislative

Basis, Manual for Courts-Martial, United States 235 (1951 ed.).

On the other hand, confidential communications between

husband and wife were privileged.  The person entitled to the

privilege was the spouse who made the communication.  Normally, such a communication could not be disclosed unless that spouse consented to disclosure or otherwise waived the privilege.  However, the court could require the spouse of an accused to disclose the communication, at the accused's request, even if the spouse was the one who made it.  1951 MCM chap. XXVII, para. 151.b.(2).

In United States v. Leach, 7 C.M.A. 388, 397, 22 C.M.R. 178, 187 (1956), a spousal privilege case, this Court held that a wife was "injured," within the meaning of paragraph 148.e., by her husband's act of adultery.  We interpreted the term "injured" to "embrace[] mental suffering arising from violations of the marital relationship."  7 C.M.A. at 397, 22 C.M.R. at 187.  Although adultery was not one of the offenses listed in paragraph 148.e., we concluded that the list was merely illustrative, not exclusive.  7 C.M.A. at 397, 22 C.M.R. at 187.

Nine years later, we had another opportunity to determine the scope of the exception to the marital privilege.  In Massey, the accused was charged with carnal knowledge of his own daughter.  Over the accused's objection, his wife was permitted to testify to the victim's complaints about the abuse.  15 C.M.A. at 275-77, 35 C.M.R. at 247-49.  After noting that the accused had not been charged with adultery, we indicated that "the proper approach to consideration of whether an offense

charged against one spouse injures the other depends not upon

the outrage to her sensibilities or a violation of the marital

bonds, but upon some direct connection with her person or

property." 15 C.M.A. at 282, 35 C.M.R. at 254. We then held

that:

> the offense of carnal knowledge, even when incestuous, is not a direct injury to a spouse, which causes her testimony to fall without the accused's properly invoked privilege. In order to justify elimination of that shield to the marital union, there must be something more than conduct which abuses its privileges and responsibilities; there must be some direct, palpable invasion of, or injury to, the interests of the witness.

15 C.M.A. at 282-83, 35 C.M.R. at 254-55.

In United States v. Rener, consistent with our holding in

Massey, we overruled Leach and held that adultery is not an

injury to the person or property of the spouse, but merely a

"'violation of the marital bonds.'" 17 C.M.A. 65, 68, 37 C.M.R.

329, 332 (1967) (quoting Massey, 15 C.M.A. at 282, 35 C.M.R. at

254).

The President issued a new Manual in 1969. Manual for

Courts-Martial, United States (1969 rev. ed.). The 1969 Manual

retained the "treatise" approach of the previous Manual with

regard to evidentiary matters. In paragraph 148.e., "adultery"

and "mistreatment of a child of the other spouse" were added as

offenses to which the spousal privilege against testifying did

not apply. These additions were in direct response to this

9

United States v. Taylor, No. 06-0319/MC

Court's holdings in <u>Massey</u> and <u>Rener</u>.  Dep't of the Army,

Pamphlet 27-2 <u>Analysis of Contents, Manual for Courts-Martial,</u>

<u>United States, 1969, Revised Edition</u> at 27-32 (1970).  The

drafters explained the need to depart from the holdings in

<u>Massey</u> and <u>Rener</u>.  The effect of <u>Massey</u>:

> is not compatible with the needs of the military
> service, in which, especially overseas, large groups
> of military personnel and their dependents live in
> closely knit communities.  In these communities and
> generally in military life, child beating and child
> molestation by parents cannot be tolerated and
> certainly should not be facilitated by a rule of
> evidence prescribed in the Manual.

<u>Id.</u>  <u>Rener</u> was not followed because "the wife is injured by

[adultery and unlawful cohabitation] which are obviously

directly deleterious to the martial [sic] relationship."  <u>Id.</u>

During the early 1970s, the Supreme Court approved and sent

the Federal Rules of Evidence to Congress for adoption.  1

Stephen A. Saltzburg et al., <u>Federal Rules of Evidence Manual</u>

pt. 1, at 4 (9th ed. 2006).  The proposed rules contained nine

privileges and four rules for controlling the use of those

privileges.  Because significant controversy arose over these,

Congress instead opted for a single rule that mandated a common-

law approach to privileges.  2 Saltzburg et al., <u>Military Rules</u>

<u>of Evidence Manual</u>, <u>supra</u>, § 501.02[2].  The Federal Rules, as

amended, were signed into law on January 2, 1975.  Pub. L. No.

10

93-595, 88 Stat. 1926 (1975); 1 Saltzburg et al., Federal Rules of Evidence Manual, supra, pt. 1, at 4-5.

A little more than three months later, this Court was asked, in the case of an accused convicted of committing sexual offenses on his own child, whether the Massey holding was still valid in light of the President's changes in the 1969 Manual. We determined that Massey "was no longer viable." United States v. Menchaca, 23 C.M.A. 67, 68, 48 C.M.R. 538, 539 (1974). We acknowledged that differences between the military and federal rules of evidence are allowable, that the change to paragraph 148.e. to add "mistreatment of a child" as an injury to the spouse was consistent with the rules of evidence for use in federal district courts that the Supreme Court had proposed to Congress, and that the change expressed the specific intent of the drafters to overrule Massey. 23 C.M.A. at 69, 48 C.M.R. at 540.

In 1980, the President adapted the Federal Rules to military practice in the Military Rules of Evidence. 1 Saltzburg et al., Military Rules of Evidence, supra, at xv. Rather than take the common law approach to privileges approved by Congress, the Military Rules included many of the specific privileges originally proposed by the Supreme Court. The President took this approach because of the military justice system's "dependence upon large numbers of laymen, temporary

courts, and inherent geographical and personnel instability due to the worldwide deployment of military personnel. Consequently, military law requires far more stability than civilian law."  2 Saltzburg et al., Military Rules of Evidence, supra, § 501.03 (Drafters' Analysis).

M.R.E. 504 combined into one rule the husband-wife and the confidential marital communications privileges.  For the first time, it made the exceptions to the husband-wife privilege applicable as well to the marital communications privilege. Thus, there is no marital confidential communications privilege "[i]n proceedings in which one spouse is charged with a crime against the person or property of the other."  M.R.E. 504(c)(2)(A).  Although the Rule does not list specific offenses encompassed in the term "crime against the person," the drafters provided some insight into the scope of the exceptions:

> The Rule thus recognizes society's overriding interest in the prosecution of anti-marital offenses . . . . The Rule is similar to 1969 Manual Para. 148 e but has deleted the Manual's limitation of the exceptions to the privilege to matters occurring after marriage or otherwise unknown to the spouse as being inconsistent with the intent of the exceptions.

Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-40 (2005 ed.) [hereinafter Drafters' Analysis].

In her scholarly dissent, Judge Ryan maintains that the language of the Rule itself, the deletion of the term "adultery"

12

from the Rule as it appeared in the 1969 Manual, and the common
law and Supreme Court interpretations of the marital
communications privilege all support a conclusion that adultery
is not a "crime against the person or property" of the spouse.
We are certainly not unsympathetic to the view that in
construing the language of a rule, "it is generally understood
that the words should be given their common and approved usage."
McCollum, 58 M.J. at 340 (citation and quotation marks omitted).

But, there is no evidence that, in adopting M.R.E.
504(c)(2)(A), the President meant to amend, let alone jettison,
those exceptions to the privilege listed in paragraph 148.e. of
the 1969 Manual.  Rather, the Drafters' Analysis is strong
evidence that he meant to apply the exceptions to both the
husband-wife testimonial privilege and the marital
communications privilege.  Moreover, this reading of the Rule is
consistent with the principle that testimonial privileges "must
be strictly construed and accepted 'only to the very limited
extent that permitting a refusal to testify or excluding
relevant evidence has a public good transcending the normally
predominant principle of utilizing all rational means for
ascertaining the truth.'"  Trammel, 445 U.S. at 50-51 (quoting
Elkins v. United States, 364 U.S. 206, 234 (1960) (Frankfurter,
J., dissenting)).  We therefore hold that, for the purposes of
M.R.E. 504(c)(2)(A), adultery is a crime against the person of

13

the other spouse.  The military judge was correct in denying Appellant's motion in limine to assert the privilege against his wife's testimony.

## IV.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Taylor, 06-0319/MC

Ryan, Judge (dissenting):

I do not question that adultery is an anti-marital offense. This conclusion is intuitive and a matter of common sense. But that premise does not answer the question whether adultery is a "crime against the person or property of the other spouse," the actual exception to the husband-wife privilege contained in Military Rule of Evidence (M.R.E.) 504(c)(2)(A), which is at issue here.

M.R.E. 504 and the exceptions thereto reflect the policy judgments of the President regarding those communications between a husband and wife that are privileged -- and as to those communications that will be exempted from that privilege. See United States v. McCollum, 58 M.J. 323, 342 (C.A.A.F. 2000) (determining whether an exception to a privilege should apply "is a legal policy question best addressed by the political and policy-making elements of the government"). Our duty is to interpret and to apply the law as written in the language of the rule itself.

In this case, an inquiry into the scope of the M.R.E. 504(c)(2)(A) privilege exception must, therefore, focus on the meaning of the words "crime against the person or property of the other spouse." A crime "against the person . . . of the spouse," is not defined in either the Manual for Courts-Martial, United States (2005 ed.) (MCM) or the Military Rules of

Evidence.  "In construing the language of a statute or rule, it is generally understood that the words should be given their common and approved usage."  McCollum, 58 M.J. at 340 (quotation marks omitted).

It is not in accordance with the common or approved usage of the language "crime[s] against the person of the other spouse" to include within that phrase every act that might emotionally harm, offend, or betray.  Such a broad construction that includes these acts would impermissibly render the limiting words "person or property of the other spouse" superfluous.  See United States v. Menasche, 348 U.S. 528, 538–39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute' . . . ." (quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883))).

In my view, the common and approved usage of "crimes against the person of the other spouse" here refers to crimes of violence against that spouse.  This definition reflects and is consistent with the overall structure of M.R.E. 504(c)(2)(A), which makes repeated references to "crimes against the person."  See Gustafson v. Alloyd Co., 513 U.S. 561, 568 (1995) ("we adopt the premise that [a] term should be construed, if possible, to give it a consistent meaning throughout").

More importantly, this construction is in accord with the long-standing recognition in criminal law that crimes "against

2

the person" refer to offenses of violence against a person. See, e.g., 2 Wayne R. LaFave, Substantive Criminal Law §§ 14-17 (2d ed. 2003) (discussing offenses against the person); 1 William O. Russell & Charles S. Greaves, A Treatise on Crimes and Misdemeanors 481-782 (1845) (discussing "offenses against the persons of individuals"); see also Keeble v. United States, 412 U.S. 205, 206 (1973) (including murder, manslaughter, rape, and assault with intent to kill among "crimes against the person"); Relford v. Commandant, United States Disciplinary Barracks, Ft. Leavenworth, 401 U.S. 355, 369 (1971) (equating an offense violative of the physical security of a person, such as the rapes and kidnapping at issue in the case, with a "crime against the person of the individual").

This definition of "crime[s] against the person of the other spouse" is also consistent with the common law view of the exception to the husband-wife privilege. See, e.g., M.R.E. 101 (reaffirming the congressional mandate in Article 36(a) Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836(a) (2000)). In Bassett v. United States, the Supreme Court examined whether a statutory exception to the privilege "for a crime committed by one against the other" was available in a case involving polygamy. 137 U.S. 496, 503-06 (1890) (analyzing a federal statute applicable to the Utah Territory).

3

The Supreme Court reaffirmed the common law rule that "the wife is not competent [as a witness against her spouse], except in the cases of violence upon her person." Bassett, 137 U.S. at 505 (quoting Stein v. Bowman, 38 U.S. 209, 222 (1839)). The Supreme Court recognized a spouse's "humiliation and outrage" caused by the polygamy or adultery of the other spouse, and that those offenses may be "crimes which involve disloyalty to the marital relation." Bassett, 137 U.S. at 506. Nonetheless, the Court, while ceding the anti-marital nature of such offenses, expressly rejected the notion that either polygamy or adultery was a crime that permitted an exception to the marital privilege.[1] Id.

The Supreme Court's conclusion that the statutory exception to the marital privilege was not available in the case of adultery or bigamy is compelling. More telling, for purposes of this case, is the Supreme Court's determination that while a legislature can change the parameters of the "ancient" marital privilege via statute, the language of a statute "should not be adjudged as working a departure from the old and established rule, unless the language imperatively demands such construction." Id. at 505-06 (emphasis added). The language of

---

[1] The statutory exception to the privilege examined in Bassett facially gives greater traction to the majority's analysis in this case than the language of the privilege actually before us.

4

United States v. Taylor, 06-0319/MC

M.R.E. 504(c)(2)(A) does not demand the construction employed by the majority.

This Court should follow the decision and reasoning of the Supreme Court in Bassett, which has not been overruled. We have no language "imperatively demanding" exemption from the husband-wife privilege. And we have a problematic and checkered history in both the former MCMs and the conflicting judicial decisions from this Court on the precise question at issue in this case. __ M.J.__ (6-12).

Illustrative of this point is the fact that the MCM -- with the evidentiary rule we apply in the present case -- does not specifically list the crime of adultery as an exception to the long-standing husband-wife privilege. But it does specifically list other anti-marital offenses. M.R.E. 504(c)(2)(C).

Also, the 1969 MCM specifically listed adultery as such an exception. MCM para. 148.e (1969 rev. ed.) (para. 148.e was omitted by change 3, Sept. 1, 1980). Ordinarily, where language exists in an earlier version of a rule and is removed from a later edition of the rule, the later rule controls. See e.g., Keppel v. Tiffin Savings Bank, 197 U.S. 356, 373 (1905) ("[I]t cannot in reason be said that the omission . . . gives rise to the implication that it was the intention of Congress to reenact it."). I find the deletion of any reference to the offense of

5

adultery in the present M.R.E. 504(c)(2)(A) exception problematic for the position of the majority.

Nor is adultery specifically listed in the Drafters' Analysis addressing the M.R.E. 504(c)(2)(A) exception. Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-40 (2005 ed.) [hereinafter Drafters' Analysis]. The absence of adultery as a listed exception in either the present MCM or the Drafters' Analysis cannot be ignored.

The Drafters' Analysis does reference anti-marital offenses:

> This provision is taken from proposed Federal Rule 505(c)(1) and reflects in part the Supreme Court's decision in Wyatt v. United States, 362 U.S. 525 (1960). The Rule thus recognized society's overriding interest in prosecution of anti-marital offenses . . . . The Rule is similar to 1969 Manual Para. 148 e . . . . ."

Drafters' Analysis at A22-40 (emphasis added) (citation omitted). Wyatt v. United States dealt with a specific anti-marital offense -- violations of the Mann Act, 18 U.S.C. § 2421 (2000). Wyatt, 362 U.S at. 525. Violations of this statute and similar offenses were reflected as exceptions to the husband-wife privilege by the President in their own specific exception: M.R.E. 504(c)(2)(C). These observations are a source of concern to me independent of the important point that the Drafters'

Analysis, when it does not corroborate the plain language of the rule, is of questionable precedential weight.

Whatever the best policy may be, and however useful admissions such as the one in this case would be to prove the offense of adultery, the present language of the M.R.E. 504(c)(2)(A) cannot stretch so far as to include adultery within the language of "crime against the person of the spouse." This determination is supported not only by the language of the rule itself, but by both the common law and Supreme Court precedent. There is no reason to ignore these authorities based on conjecture or supposition as to the precise scope of the Drafters' Analysis, which is not itself a rule.

Given that I dissent from the majority's ruling and hold that the lower court erred, the question remains whether the error was harmless. After examining the record, I cannot say that the testimony of Appellant's wife did not have a substantial influence on the military judge. See Kotteakos v. United States, 328 U.S. 750, 764-65 (1946).

This case involved the charged offense of adultery and carnal knowledge. Appellant denied that he had a sexual relationship with AM. AM testified that Appellant did have a sexual relationship with her. The decisional crux was whether Appellant or the alleged object of his infidelity was truthful, a question that could have been resolved either way. The

7

testimony of Appellant's wife, T, that Appellant admitted his adultery to her, may well have tipped the balance against Appellant on this key issue.  See Hawkins v. United States, 358 U.S. 74, 79 (1958) (concluding that "after examining the record we cannot say that [wife's inadmissible privileged] testimony did not have substantial influence on the jury").

I respectfully dissent.