# United States Court of Appeals for the Federal Circuit

---

**STANLEY J. AVGOUSTIS,**

*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee*

---

2010-7092

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 08-1524, Judge Alan G. Lance Sr.

---

Decided: April 6, 2011

---

SEAN A. RAVIN, of Washington, DC, argued for claimant-appellant.

MICHAEL P. GOODMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

---

Before BRYSON, DYK, and PROST, *Circuit Judges.*

DYK, *Circuit Judge.*

Appellant Stanley J. Avgoustis ("Avgoustis") applied for attorneys' fees as a prevailing party under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). The United States Court of Appeals for Veterans Claims ("Veterans Court") disallowed recovery for certain items involving client communications because the statements did not describe the purpose of the activity sufficiently to determine if the charges were reasonable. *See Avgoustis v. Shinseki*, No. 08-1524, slip op. at 3 (Vet. App. Jan. 13, 2010). Avgoustis argued that requiring a more detailed description would violate his attorney-client privilege. The Veterans Court held that requiring general descriptions of the items would not violate the attorney-client privilege. We affirm.

BACKGROUND

At an earlier stage in these proceedings, Avgoustis appealed an adverse Board of Veterans' Appeals ("Board") decision to the Veterans Court. The Board had found that he did not submit new and material evidence sufficient to reopen his claim for service connection for post-traumatic stress disorder. Pursuant to an agreement by the parties, the Veterans Court remanded the case to the Board for further proceedings to consider additional evidence discovered by Avgoustis.

Subsequently, Avgoustis submitted an EAJA application to the Veterans Court for attorneys' fees and expenses, claiming 31.6 attorney hours and 5.1 paralegal hours for a total of $6,193. The Veterans Administration ("VA") conceded that Avgoustis satisfied most of the requirements for attorneys' fees under EAJA. He was a

prevailing party; he had a net worth below $2,000,000; and the VA's position was not substantially justified. The only disputed issue was whether Avgoustis had properly provided "itemized statement[s] . . . stating the actual time expended" as required by 28 U.S.C. § 2412(d)(1)(B).

The VA opposed the application in part, arguing that the fees for twenty six of the billing entries should be denied because the descriptions were not sufficiently detailed. The entries in question each stated only that Avgoustis' lawyer had "review[ed] client correspondence" or "draft[ed] client correspondence." J.A. 23–24. Avgoustis' lawyer billed 0.2 hours for each of the twenty six disputed entries for a total of 5.2 hours. Avgoustis argued that requiring more detailed billing statements disclosing the subject matter of his communications with his attorney would violate attorney-client privilege.

The Veterans Court agreed with the VA that the disputed entries "fail[ed] to indicate the purpose of these billed activities and, therefore, are simply inadequate to permit effective review of the appellant's application." *Avgoustis*, slip op. at 3. The Veterans Court found no violation of the attorney-client privilege, concluding that

> [t]he entries in this case could easily have contained sufficient additional detail without disclosing privileged information. For example, the entries do not distinguish between communications updating the client as to the case's status, seeking the client's input as to the issues raised, discussing the terms of the proposed joint motion, and seeking approval for actions that require the consent of the client. These distinct forms of client contact can easily be described in general terms without disclosing specific details that may be protected by privilege.

*Id.* at 4.  The Veterans Court accordingly reduced the fee award by 2.5 hours (or $437.50).  *Id.* at 3.  Avgoustis timely appealed to this court.   We have jurisdiction pursuant to 38 U.S.C. § 7292(a).

## DISCUSSION

Under 38 U.S.C. § 7292(a) and (c), our review of decisions of the Veterans Court is limited to a "challenge to the validity of any statute or regulation or any interpretation thereof . . . ."  However, "applying a dispositive legal standard to undisputed facts is essentially a matter of law, not fact." *Wood v. Peake*, 520 F.3d 1345, 1351 (Fed. Cir. 2008).  Here, the facts are undisputed.  On appeal, Avgoustis argues only that the Veterans Court erred in holding that requiring disclosure of the general subject matter of itemized communications does not violate attorney-client privilege.

## I

The VA first argues that EAJA supersedes the attorney-client privilege by requiring "itemized statement[s]." We disagree.  The Supreme Court has established that "courts may take it as a given that Congress has legislated with an expectation that the common law principle will apply except when the statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).[1]  In particular, the

---

[1]   *See also Sierra Pac. Power Co. v. Fed. Power Comm'n*, 223 F.2d 605, 607 (D.C. Cir. 1955) ("[A] statute will not be construed as taking away a common law right . . . unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy . . . ."); Norman J. Singer & J.D. Shambie Singer,

Supreme Court has held that a statute abrogates common law privileges only if "the language declaring the legislative will [is] so clear as to prevent doubt as to its intent and limit." *Bassett v. United States*, 137 U.S. 496, 505–506 (1890) (narrowly construing Utah statute that created exception to spousal privilege for crimes committed by one spouse against another and refusing to find that it abrogated spousal privilege when husband was charged with polygamy). More recently, in *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981), the Court stated that a tax summons issued under 26 U.S.C. § 7602 was "subject to . . . traditional privileges and limitations" and that the statutory provision and legislative history did not "suggest[ ] an intent on the part of Congress to preclude application of [a traditional limitation like] the work-product doctrine." Citing *Upjohn*, two courts of appeals have recently held that "[s]tatutes requiring disclosure, but silent on the question of privilege, do not override customary privileges." *United States v. Forrester*, 616 F.3d 929, 942 (9th Cir. 2010); *United States v. Danovaro*, 877 F.2d 583, 588 (7th Cir. 1999) (both cases hold that a statute which mandates disclosure of a wiretap application if fruits of wiretap are used in court did not abrogate government's customary privilege to withhold (i.e., redact) information critical to informant safety).

The attorney-client privilege is, of course, a common law privilege. Although the Federal Rules of Evidence are not applicable to Veterans Court proceedings, they do apply to our court. *See* Fed. R. Evid. 1101(a). Under the

3 *Sutherland Statutory Construction* § 61:1 (7th ed.) ("A statute may take away a common-law right, but courts presume the legislature has no such purpose," and "[i]f a common-law right is to be taken away, it must be noted clearly by the legislature . . . [which] must speak directly to the question addressed by the common law.").

Federal Rules, the attorney-client privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," Fed. R. Evid. 501, except to the extent the rules governing waiver of the privilege codified at Fed. R. Evid. 502 differ from the common law.

Here, there is no statutory language abrogating the privilege. The EAJA statute merely provides, in pertinent part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, *including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.*

28 U.S.C. § 2412(d)(1)(B) (emphasis added). The statute does not even discuss the nature of any disclosures required in "an itemized statement," and it certainly does not speak directly to the attorney-client privilege. Moreover, the legislative history does not suggest that the privilege was being abrogated. The relevant committee reports fail even to discuss the purpose of the "itemized statement" requirement and do not state or suggest that it was intended to supersede the attorney-client privilege. *See* S. Rep. 96-974 (Sept. 19, 1980); H.R. Rep. 96-1418 (Sept. 26, 1980); H.R. Rep. 96-1434 (Sept. 30, 1980) (Conf. Rep.).

Given the presumption against abrogating common law privileges absent clear legislative intent, we cannot

say that the "the language declaring [a] legislative will [to revoke the attorney-client privilege is] so clear as to prevent doubt as to its intent and limit." *See Bassett*, 137 U.S. at 506. In fact, we cannot see any indication that Congress intended to abrogate the attorney-client privilege, and conclude that EAJA does not do so.

## II

Alternatively, the VA argues that the disclosures of general subject matter required by the Veterans Court here do not violate the attorney-client privilege. We agree. In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court emphasized that attorneys' fee applicants under a comparable attorneys' fee statute, 42 U.S.C. § 1988, "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." The Court elaborated that "[p]laintiff's counsel . . . is not required to record in great detail how each minute of his time was expended [but] at least counsel should identify the general subject matter of his time expenditures." *Id.* at 437 n.12. Under numerous fee-shifting statutes, courts of appeals have consistently required that attorneys' fee applicants provide the general subject matter of their billing entries.[2] Although this court has

---

[2]    *See, e.g.*, *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (collecting cases in which the District of Columbia Circuit found inadequate detail in fee applications when the general subject matter of billing entries was not disclosed and finding entries inadequate that were merely "for time spent in teleconferences or meetings [when] the purposes [of those entries were] not provided"); *Fischer v. SJB-P.D., Inc*, 214 F.3d 1115, 1121 (9th Cir. 2000) (involving 42 U.S.C. § 12205 under the Americans with Disabilities Act and requiring applicant to "identify[ ] the general subject matter of his time expenditures"); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (involving antitrust fee-shifting

not directly addressed the level of specificity required in subject matter disclosures under EAJA, we have stated that time records will satisfy EAJA's itemized statement requirement when they provide "contemporaneous records of exact time spent on the case, by whom, their status and usual billing rates," *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404–05 (Fed. Cir. 1987), as well as "an identification of the work done in each time increment," *TGS Int'l, Inc. v. United States*, 983 F.2d 229, 230 n.1 (Fed. Cir. 1993).

The Veterans Court in an earlier case held that under the itemized statement requirement of EAJA, entries such as "writing to client," "reviewing Court's notice of docketing," "reviewing litigation file," "[t]elephone conversations with VA counsel," and "faxing materials to VA counsel" were "too vague and lacking in detail to permit effective review of the application" because they do "not adequately identif[y] the purpose of these activities." *McDonald v. Nicholson*, 21 Vet. App. 257, 264 (2007). The Veterans Court followed *McDonald* here. The Veterans Court's specificity requirements as articulated in *McDonald* and this case are in accordance with these cases from the Supreme Court, our circuit, and other circuits. The Veterans Court explained that "*McDonald* contains no requirement that attorneys disclose the exact content of communications between themselves and their clients." *Avgoustis*, slip. op. at 4.

We also agree that such requirements do not in most cases invade the attorney-client privilege when applied to client communications. Unlike the work-product doctrine, *see* Fed. R. Civ. P. 26(b)(3), which protects attorney materials prepared in anticipation of litigation, the attorney-

---

statute at 15 U.S.C. § 15 and reducing recovery for failure to adequately describe purpose of billing entries).

client privilege protects only "confidential attorney-client communications." Fed R. Evid. 502. Thus, we are concerned here with disclosures that would reveal the content of a communication between an attorney and client.

Given that Avgoustis publicly filed a claim for compensation with the VA, the fact that he was communicating with an attorney about his compensation claim is not confidential and hence not in and of itself privileged. By definition, claims for attorneys' fees must be limited to this representation, and disclosures cannot implicate counsel's advice on other matters. At oral argument, Avgoustis' counsel admitted that the "privilege is not implicated if [one is] simply writing an itemized statement [stating] 'updating [on] case,' 'answering questions,' [or] 'responding to inquiry.'" Oral Arg. at 7:11–8:00, *available                                                    at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 10-7092.MP3.

So far as we have been able to determine, no court of appeals has held that disclosure of the general subject matter of a billing statement under fee-shifting statutes violates attorney-client privilege. The attorney-client privilege primarily protects "those attorney to client communications which would have a tendency to reveal the confidences of the client." Kenneth S. Broun, *McCormick on Evidence* § 89 (6th ed. 2006); *see also* Restatement (Third) of Law Governing Lawyers § 69(d) (2000) ("The attorney-client privilege protects only the content of the communication between privileged persons"). "Courts have consistently held that the general subject matters of clients' representations are not privileged." *United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077, 1081 (D.C. Cir. 2001); *see also In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) ("[T]he identity of the client, the amount of the fee, the identification of payment by case

file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.").  Courts have also frequently required disclosures of the general subject matter of communications without any indication that they would implicate the attorney-client privilege or that they raise any conflict with the privilege.  The Eighth Circuit upheld the district court's reduction of hours for "vague" entries, such as "met w[ith] client."  *H.J. Inc.*, 925 F.2d at 260.  Also, the Sixth Circuit affirmed a district court's finding that entries merely noting that the attorney had numerous meetings with class representatives were inadequate.  *Reed v. Rhodes*, 934 F. Supp. 1492, 1505, 1507 (N.D. Ohio 1996), *aff'd* 179 F.3d 453, 472 (6th Cir. 1999). These entries are indistinguishable from the items in this case stating "review client correspondence" and "draft client correspondence."

To the extent that the issue has been directly addressed (which is seldom), the courts have concluded that requiring such disclosures does not violate the attorney-client privilege absent unusual circumstances.  In *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129–30 (9th Cir. 1992), the Ninth Circuit explained that "the general purpose of the work performed [by attorneys is] usually not protected from disclosure by the attorney-client privilege," but statements and time records which might reveal "the motive of the client in seeking representation" or the content of a communication between the attorney and client would "fall within the privilege."  The Fourth Circuit has similarly held that billing records are not privileged unless they "reveal something about the advice sought or given."  *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402–03 (4th Cir. 1999).  In *Chaudhry*, the court found that requiring disclosure of notations about specific statutes researched by the attorney would violate the

attorney-client privilege because it would reveal the content of advice sought and given. *Id.* None of the sample disclosures suggested by the Veterans Court here, such as "seeking the client's input as to the issues raised" or "seeking approval for actions that require the consent of the client," would come anywhere close to revealing the nature of the advice sought or given. At oral argument here we pressed Avgoustis' counsel to describe how general descriptions of the kind required by the Veterans Court, such as "communications updating the client as to the case's status" and "seeking the client's input as to the issues raised," would violate the attorney-client privilege. Counsel was unable to do so.

It is noteworthy that in his reply to the VA's initial contention that the billing statements were inadequate, Avgoustis himself provided the purpose and general subject matter of 2.6 of the 5.2 disputed hours. For example, he explained that he billed 0.8 hours to "communicate with the client when initially retained," 0.8 hours to "communicate with [the] client regarding the significance of [the summary of issues for a mediated conference with the VA]," and one hour to "communicate with [the] client regarding the significance of [negotiations for the joint motion for remand and the attorneys' fee application]." *See* J.A. 39–40. He evidently did not believe these disclosures violated attorney-client privilege.

It is also noteworthy that in certain circumstances, federal courts have required parties under Federal Rule of Civil Procedure 26(b)(5)(A)(ii) to make similar disclosures about the general subject matter of potentially privileged documents in privilege logs. The rule requires a party withholding discovery documents under a claim of privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and

do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The advisory committee notes further explain that "details concerning . . . general subject matter . . . may be appropriate." The Second Circuit, for example, found privilege logs were insufficiently detailed when they merely stated "Fax: Whistleblower article" or "Summary of Enclosures" and justified the privilege by characterizing the documents as "attorney-client communication[s]" without explanation. *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). It would be strange if this requirement to disclose general subject matter in a privilege log invalidated the attorney-client privilege when the purpose of the rule is to determine whether the document is privileged "without revealing information itself privileged or protected." Fed. R. Civ. P. 26(b)(5)(A)(ii).

As recognized by the Ninth and Fourth Circuits, requiring detailed disclosure of subject matter could conceivably implicate the attorney-client privilege in unusual circumstances—e.g., if EAJA required an attorney to state that his client had consulted him as to whether the client had committed a crime. Contrary to the government's contention, if such circumstances existed, the privilege would be implicated even if the disclosures occur only after the end of the representation. Avgoustis claims that the Veterans Court might in fact require further disclosures that might impinge on the privilege. This is merely a hypothetical. The Veterans Court has not required such disclosures. The government explicitly stated at oral argument that it would be "satisfied with the level of detail provided" in the Veterans Court opinion. Oral Arg. at 14:39–50. We are confident that the Veterans Court will be sensitive to protect the attorney-

client privilege in future cases if a problem arises. We see no problem with the disclosures required here, nor should clients fear that the attorney-client privilege would be waived by these required disclosures.

### III

For the foregoing reasons, we conclude that EAJA does not abrogate the attorney-client privilege, and that the privilege is not invaded in this case.

### **AFFIRMED**

### COSTS

No costs.