IDENIX PHARMACEUTICALS, INC., Universita Degli Studi Di Cagliari, Centre National De La Recherche Scientifique and L'Université Montpellier II, Plaintiffs,

v.

GILEAD SCIENCES, INC. and Gilead Pharmasset LLC, Defendants.

Idenix Pharmaceuticals, Inc., Universita Degli Studi Di Cagliari, Centre National De La Recherche Scientifique and L'Université Montpellier II, Plaintiffs,

v.

Gilead Pharmasset LLC, Defendant.

Idenix Pharmaceuticals, Inc. and Universita Degli Studi Di Cagliari, Plaintiffs,

v.

Gilead Sciences, Inc., Defendant.

Civil Action No. 13-1987-LPS, Civil Action No. 14-109-LPS, Civil Action No. 14-846-LPS

United States District Court, D. Delaware.

Signed July 20, 2016

Steven J. Balick, Andrew Colin Mayo, John G. Day, Lauren E. Maguire, Ashby & Geddes, Wilmington, DE, Anthony M. Insogna, Calvin P. Griffith, Jennifer L. Swize, John M. Michalik, Leozino Agozzino, Lisa L. Furby, Michael S. Weinstein, Ryan B. McCrum, Pro Hac Vice, for Plaintiffs.

Annamartina Tyreus Hufnal, Douglas Edward McCann, Elizabeth M. Flanagan, Gregory Robert Booker, Joseph B. Warden, Robert M. Oakes, Santosh Victor Coutinho, Fish & Richardson, P.C., Wilmington, DE, William Chad Shear, Fish & Richardson, P.C., San Diego, CA, Alicia A. Russo, Anthony M. Zupcic, Jenny Shmuel, Lorie Ann Morgan, Michael R. Headley, Tasha M Francis, Pro Hac Vice, for Defendants.

### MEMORANDUM ORDER

HONORABLE LEONARD P. STARK, UNITED STATES DISTRICT JUDGE

At Wilmington this **20th** day of **July, 2016:**

In connection with resolving certain discovery disputes, the Court ordered the parties to choose documents from each others' privilege logs for the Court to review *in camera*, in order to assess the parties' complaints about their opponents' assertions of privilege. (*See* D.I. 274 at 31–33)[1] Accordingly, on April 28, 2016, the

1. All docket references are to C.A. No. 13-1987 unless otherwise noted.

parties submitted numerous materials to the Court, including:

- Plaintiffs Idenix Pharmaceuticals, Inc., Universita Degla Studi di Cagliari, Centre National de la Recherche Scientifique, and L'Université Montpellier II ("Idenix" or "Plaintiffs") filed a letter explaining their position that ten documents they selected for *in camera* review from the privilege log of Defendants Gilead Sciences, Inc. and Gilead Pharmasset LLC ("Gilead" or "Defendants") are not privileged (hereinafter, "Idenix Letter [or Ltr.] 1")

- Defendants filed a response to Idenix Letter 1 regarding the documents Plaintiffs selected for *in camera* review ("Gilead Letter [or Ltr.] 1")

- Defendants filed a letter explaining their position that ten documents selected for *in camera* review from the privilege log of Plaintiffs are not privileged ("Gilead Letter [or Ltr.] 2")

- Plaintiffs filed a response to Gilead Letter 2 regarding the documents Defendants selected for *in camera* review, attaching to it two declarations from individuals who are identified on several of the documents ("Idenix Letter [or Ltr.] 2").

Below, the Court provides its resolution of the specific privilege disputes the parties have placed before it. The Court also directs the parties to meet and confer and provide proposals for how the Court's resolution of these selected disputes can most efficiently be applied to any remaining privilege disputes.

Attorney-Client Privilege

■■■ The attorney-client privilege "is designed to encourage clients to make full disclosure of facts to counsel so that [counsel] may properly, competently, and ethically carry out representation." *In re Im-* *pounded,* 241 F.3d 308, 316 (3d Cir.2001) (internal quotation marks omitted). The attorney-client privilege protects communications between a client and an attorney related to the purpose of securing legal advice. *See Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 862 (3d Cir.1994). The privilege applies to communications from an attorney to a client as well as from a client to its attorney. *See Upjohn v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

■■■ The burden of demonstrating the applicability of the attorney-client privilege rests on the party asserting the privilege. *See Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 805 F.2d 120, 126 (3d Cir.1986). Specifically, the party asserting privilege must show each of the following:

(1) [T]he asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation,* 599 F.2d 1224, 1233 (3d Cir.1979) (internal quotation marks omitted).

Documents Selected from Gilead's Privilege Log

After the Court held a teleconference on March 4 concerning the parties' privilege log disputes, "Gilead agreed to diligently

review as many of the documents identified by Idenix [as non-privileged] as possible in two weeks and serve a partially-revised privilege log." (Gilead Ltr. 1 at 3) From amongst the approximately 30,000 entries on its privilege logs, Gilead then produced nearly 300 previously-withheld documents that Gilead determined are not privileged. (*See* Idenix Ltr. 1 at 1) Thereafter, Idenix selected for *in camera* review ten documents that were still listed on Gilead's privilege log. (*See* Idenix Ltr. 1 at Ex. 3) (listing selected documents) Gilead offered the next day to not maintain privilege over two of these documents, and in connection with the letter briefing has now decided no longer to assert privilege with respect to another of the ten selected documents.

The Court's rulings relating to Gilead's assertions of privilege are as follows:

**Entry Nos. 6072, 27773,** and **10063** are **NOT PRIVILEGED.** Gilead no longer asserts privilege over any of them. (*See* Gilead Ltr. 1 at 3)

■ **Entry No. 35** (Gilead Ltr. 1 Ex. 1) is **NOT PRIVILEGED.** It is a non-lawyer communication partially redacted by Gilead based on attorney-client privilege. Specifically, it is an email from Dr. Raymond Schinazi, Pharmasset founder and Executive Director of the Board, to Pharmasset chemist Jeremy Clark, and the redacted portion consists of Dr. Schinazi telling Mr. Clark that a lawyer had been hired and Mr. Clark should meet him. This redacted portion is not privileged. *See Avgoustis v. Shinseki,* 639 F.3d 1340, 1344 (Fed.Cir.2011) ("Courts have consistently held that the general subject matters of clients' representations are not privileged.") (internal citations omitted). Entry No. 35 shall be produced to Idenix in unredacted form.

**2.** Defendants note that this document was improperly produced by Mr. Clark in a related

■ **Entry No. 36** (Gilead Ltr. 1 Ex. 2) is **PRIVILEGED.** It is a draft email, sent between two of Mr. Clark's email addresses, addressed to Pharmasset in-house counsel Bryce Roberts regarding technical issues in a draft patent application.[2] "Where client and counsel share technical information, that communication is privileged as long as it was made for the purpose of securing legal advice or legal services, or conveying legal advice." *SmithKline Beecham Corp. v. Apotex Corp.,* 232 F.R.D. 467, 480 (E.D.Pa.2005); *see also Rohm & Haas Co. v. Brotech Corp.,* 815 F.Supp. 793, 797 (D.Del.1993) ("Drafts often contain information and communications relating to the subject matter of the document, including, for example, proposed material to be included, suggested additions and deletions, and comments on the contents, all of which are intended to be considered confidential between attorney and client and not intended for public disclosure."); *Knogo Corp. v. United States,* 213 U.S.P.Q. 936 Ct. Cl. 1980 ("Careful consideration of the respective analyses which underlie the two conflicting lines of authority leads me to conclude that the confidentiality required for the successful assertion of the attorney-client privilege can exist in regard to communications which are primarily technical expositions.").

**Entry No. 29256** (Gilead Ltr. 1 Ex. I) is **PRIVILEGED.** It is an email chain [REDACTED TEXT] That other internal executives are involved in the email chain does not render the emails "non-lawyer communications."

■ **Entry No. 10065** (Gilead Ltr. 1 Ex. 3) is **PRIVILEGED.** It is an email chain between Pharmasset employees Dr. Schinazi and Dr. Watanabe regarding the

proceeding and that they "will issue a clawback request." (Gilead Ltr. 1 at 1 n.4)

drafting of a patent application. The Court relies on Gilead's representation that Dr. Schniazi was the "liaison with the patent attorneys." (Gilead Ltr. 1 at 2) Thus, this is a confidential communication within the client for purposes of seeking legal advice.

■■■■ **Entry No. 10096** (Gilead Ltr. 1 Ex. 4) **MAY NOT BE WITHHELD AS PRIVILEGED.** It is a draft patent application reflecting edits proposed by a co-inventor. Although it "reflects a confidential communication between clients (Pharmasset employees and a co-inventor with a common interest) for the purpose of seeking legal advice" (Gilead Ltr. 1 at 2), it was also sent to two third parties ("aslok@umich.edu" and "drichman@uscd.edu") about whom Gilead has nothing to say.[3] "[A]ttorney-client privilege does not extend to third parties that are not 'necessary intermediaries,' " and Gilead has not met its burden to show that these third parties are "the client's agent[s] or possess a commonality of interest with the client." *SmithKline Beecham Corp.*, 232 F.R.D. at 476–77.

■■■■ **Entry No. 24644** (Gilead Ltr. 1 Ex. 5) is **NOT PRIVILEGED.** It is an email chain exchanged between Dr. Schinazi and Pharmasset's Alan Roemer regarding terms for engagement of counsel with regard to patent prosecution. "[T]he general subject matters of clients' representations are not privileged." *Avgoustis*,

639 F.3d at 1344 (internal citations omitted).[4]

■■■ **Entry No. 24849** (Gilead Ltr. 1 Ex. 6) is **PRIVILEGED.** It is an email chain between Dr. Schinazi, Mr. Roemer, and others inside Pharmasset, including counsel, relating to identifying counsel to prosecute patents. [REDACTED TEXT]

In sum, of the ten Gilead documents selected by Idenix for *in camera* review, the Court finds that four may be withheld as privileged.

### Documents Selected from Idenix's Privilege Log

Gilead selected for *in camera* review ten documents from Idenix's privilege log of approximately 3,000 entries. (*See* Gilead Ltr. 2 Ex. A) The Court's rulings relating to Idenix's assertions of privilege are as follows:

■■■■ **Entry No. 527** (Idenix Ltr. 2 Ex. 4) is **NOT PRIVILEGED.** It is a scientific document attached to an email sent to Idenix's in-house counsel, Jane Oswecki, purportedly seeking legal advice.[5] "If the primary purpose of a communication is to solicit or render advice on non-legal matters, the communication is not within the scope of the attorney-client privilege." *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 147 (D.Del.1977). Given the nature of the document, and given Idenix's ambiguous description of it in the log ("Draft document prepared by client

---

3. Gilead does not dispute that Entry No. 10096 was sent on April 1, 2001 to the two third parties listed on its privilege log.

4. The Court is not assessing Gilead's relevance objection, as Idenix has not had an opportunity to respond to it.

5. The cover email, Entry No. 526, is in the record at Idenix Ltr. 2 Ex. 4A. Because privilege is assessed separately for emails and attachments, *see generally WebXchange Inc. v. Dell Inc.*, 264 F.R.D. 123, 127 n. 2 (D.Del.

2010) ("WebXchange privilege log entries 813–14 are a privileged e-mail and a privileged attachment memo, sent to counsel."); *see also In re Chevron Corp.*, —— F.Supp.3d ——, ——, 2013 WL 11241413, at *5 (D.D.C. Apr. 22, 2013) (holding that emails and their attachments "need to be treated separately" for privilege review) (internal quotation marks omitted), "merely attaching something to a privileged document does not, by itself, make the attachment privileged," *In re Human Tissue Prods. Liability Litig.*, 255 F.R.D. 151, 164 (D.N.J.2008).

for counsel (Oswecki) and client review regarding legal issues regarding marketing and business development and patent issues regarding nucleosides for the treatment of HCV."), Idenix has failed to show that the "primary purpose" of the document was not the seeking of advice on a non-legal matter. Accordingly, Entry No. 527 is not properly withheld on the basis of attorney-client privilege.

**Entry No. 651** (Idenix Ltr. 2 Ex. 1) is **PRIVILEGED**. It is an email from Dr. Griffon to in-house counsel Ms. Oswecki expressly requesting legal advice. "[T]he attorney-client privilege protects attorney-client communications made for the purpose of obtaining or giving legal advice." *3V, Inc. v. CIBA Specialty Chems. Corp.*, 587 F.Supp.2d 641, 647 (D.Del.2008). That another in-house Idenix non-attorney is copied on the email does not defeat the privilege.

**Entry No. 557** (Idenix Ltr. 2 Ex. 5) is **PRIVILEGED** in part. It is an email among Idenix employees, including the author, Mr. Boehme, and one of the recipients is in-house counsel Ms. Oswecki. A portion of the email expressly seeks legal advice and is a privileged communication. Other portions, however, seek non-legal advice from non-lawyers. Accordingly, Idenix shall produce Entry No. 557 **REDACTING** only the portion of the document appearing between "acknowledgements?" and "Dave."

■ **Entry No. 455** (Idenix Ltr. 2 Ex. 3) is **PRIVILEGED**. It is an email from Dr. David Dukhan to Dr. Dick Storer, former Vice President of Chemistry at Idenix, discussing ongoing efforts to address a legal development concerning a patent application and encouraging recipients to seek legal advice about it from Ms. Oswecki. (*See* Idenix Ltr. 2 Ex. 11 (Storer Declaration) at ¶¶4, 6)

**Entry No. 297** (Idenix Ltr. 2 Ex. 9) is **PRIVILEGED** in part. It is a multi-page presentation created by Dr. Gilles Gosselin, who was Director of the Co-operative Laboratory between Idenix and two other entities. (*See* Idenix Ltr. 2 Ex. 12 (Gosselin Declaration) at ¶¶ 1–2) Idenix has produced this document redacting only portions of three pages that reflect legal advice Dr. Gosselin received from attorney Ms. Oswecki. (*See id.* at ¶¶ 7–8) It is appropriate for Idenix to produce the redacted version of Entry No. 297.

**Entry No. 412** (Idenix Ltr. 2 Ex. 10) is **PRIVILEGED**. It is a presentation entitled "HCV Patent Situation." Dr. Storer, who was involved in the preparation of this presentation, declares that the work was based at least partly on communications with counsel Ms. Oswecki. (*See* Idenix Ltr. 2 Ex. 11 at ¶ 7) Given the nature of the document, it is likely that counsel's advice related to legal matters.

**Entry No. 631-631.3** (Idenix Ltr. 2 Ex. 2) is **PRIVILEGED** in part. It is a chain containing seven emails, four of which have been partially redacted. The redactions reflect Idenix employees' work and thoughts in response to a request from Idenix's outside counsel, Sherry Knowles, and the email chain culminates in a request to Ms. Oswecki for legal advice based on the employees' responses to Ms. Knowles' email. *See Shire Dev., Inc. v. Cadila Healthcare Ltd.*, 2012 WL 5247315, at *3 (D.Del. June 12, 2012) ("Privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys, and so that the corporation is properly informed of legal advice and [may] act appropriately.") (internal quotation marks omitted); *see also Hercules Inc.*, 434 F.Supp. at 145 ("Client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon ... may also be protected."). It is appropriate for Idenix to

produce the redacted version of Entry No. 631-631.3.

 **Entry No. 483** (Idenix Ltr. 2 Ex. 7) is **NOT PRIVILEGED**. It is an email in which an Idenix scientist, Dr. Frederic Leroy, shares with eight other Idenix employees, including Ms. Oswecki, a competitor's patent and his thoughts on it. Idenix has failed to show that the primary purpose of the communication was not to obtain advice on non-legal matters. *See Hercules, Inc.*, 434 F.Supp. at 147 ("If the primary purpose of a communication is to solicit or render advice on non-legal matters, the communication is not within the scope of the attorney-client privilege.").

**Entry No. 44.1** (Idenix Ltr. 2 Ex. 8) is **NOT PRIVILEGED**. It is an email regarding scientific and corporate due diligence on which two Idenix in-house counsel are copied. Idenix has failed to show that the primary purpose of the communication was not to obtain advice on non-legal matters. *See Hercules, Inc.*, 434 F.Supp. at 147.

**Entry No. 57** (Idenix Ltr. 2 Ex. 6) is **PRIVILEGED** in part. It is a memorandum which had been previously redacted for relevance when it was produced in Canadian litigation between the parties. It was produced here in a far less-redacted form—i.e., with redactions appropriately limited to privileged portions reflecting legal strategy—as a separate, duplicate document. (Idenix Ltr. 2 Ex. 6A) Accordingly, there is no need for Plaintiffs to produce Entry No. 57 to Defendants in a less-redacted form.

In sum, of the ten Idenix documents selected by Gilead for *in camera* review, the Court finds that seven may be withheld as privileged.

*Conclusion*

Accordingly, for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Idenix and Gilead shall, no later than **July 22, 2016,** comply with this Memorandum Order by producing the documents that the Court has not permitted the parties to withhold based on privilege.

2. By no later than **July 22, 2016,** the parties shall meet and confer and file a joint status report, indicating how they propose to resolve any remaining privilege disputes, and whether part of this process should include the appointment of a special master. The parties shall also provide their positions on whether any amendment of the scheduling order is requested.

3. By no later than **July 22, 2016,** the parties shall meet and confer and shall advise the Court of any redactions they propose be made to this Memorandum Order before it is released publicly. Thereafter, the Court will issue a public version of this Order.