# In the United States Court of Federal Claims

No. 10-485V
(Filed under seal October 31, 2017)
(Reissued November 16, 2017)†

```
* * * * * * * * * * * * * * * * * * * * * * *
                                *
SALLYANN ABBOTT,               *       National Vaccine Injury
                                *       Compensation Program; attorneys'
            Petitioner,         *       fees, 42 U.S.C. § 300aa-15(e)(1);
                                *       percentage reduction of hours;
        v.                      *       baseless litigation position; vague
                                *       billing entries.
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *
                                *
            Respondent.         *
                                *
* * * * * * * * * * * * * * * * * * * * * * *
```

*Ronald C. Homer* & *Christina Ciampolillo*, Conway Homer P.C., Boston, MA, for the petitioner.

*Althea Walker Davis*, Senior Trial Counsel, Torts Branch, Civil Division, Department of Justice, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *C. Salvatore D'Alessio*, Acting Director, *Catharine E. Reeves*, Deputy Director, and *Alexis B. Babcock*, Assistant Director, all of Washington, D.C., for the respondent.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Petitioner Sallyann Abbott has moved for review, pursuant to 42 U.S.C. § 300aa-12(e), of a special master's decision denying a portion of the attorneys' fees and costs for which she had applied. She contends that the Special Master acted arbitrarily in making percentage reductions to the hours billed by her two principal attorneys. But after reviewing the briefs of the parties and hearing oral argument

---

† Pursuant to Vaccine Rule 18(b) of the Rules of the United States Court of Federal Claims, this opinion was initially filed under seal, to allow the parties to request redactions. None having been requested, the opinion is now reissued for publication with some minor, non-substantive corrections.

on this matter, the Court concludes that the Special Master reasonably acted within his discretion in reducing the attorneys' fees award. For the reasons that follow, petitioner's motion for review is **DENIED** and the Special Master's decision is **SUSTAINED**.

## I. BACKGROUND

In 2007, Mrs. Abbott received a human papillomavirus vaccine, which she contends caused her to suffer from neurological problems. *Abbott v. Sec'y of Health & Human Servs.*, No. 10-485V, 2017 WL 2226614, at *1 (Fed. Cl. Apr. 26, 2017). After several years of litigation, Mrs. Abbott received a settlement of $80,000 and filed a motion for attorneys' fees and costs, requesting an award of $193,955.15. *Id.* at *1, *5. Special Master Christian J. Moran made several reductions in fees based on the vagueness of billing records, the superfluity of tasks, the baselessness of a litigation position, and because tasks billed to paralegals were clerical or secretarial in nature.[1] *Id.* at *6–8. Petitioner ultimately was awarded $150,499.04 in fees and costs. *Id.* at *11.

The bulk of the fees reduction was due to the disallowance of a percentage of the hours billed by two attorneys.[2] The Special Master made a 30% reduction to the hours of one attorney, Christina Ciampolillo, and a 10% reduction to the hours of a second attorney, Sylvia Chin-Caplan.[3] *Id.* at *6–8. The "primary reason" given for the Ciampolillo reduction was that the Special Master found that "her billing records are too vague to demonstrate the reasonableness of her work." *Abbott*, 2017 WL 2226614, at *8. The Special Master explained that he "conducted a line-by-line analysis of all the entries documented in the timesheets" submitted by petitioner's counsel. *Id.* at *6. He found "Ms. Ciampolillo's descriptions of her work" to be

---

[1] Petitioner's request of $36,228.79 in attorneys' costs was reduced to $25,421.29, as the Special Master made adjustments to the hourly rates of two expert witnesses. *Abbott*, 2017 WL 2226614, at *8–11. Additionally, Ms. Abbott was awarded $400.16 for her personally incurred costs. *Id.* at *11. The costs portion of the award has not been challenged.

[2] The reductions made to work billed by other attorneys or paralegals, *see Abbott*, 2017 WL 2226614, at *6, *8, are not challenged in petitioner's motion for review.

[3] These attorneys were the ones primarily responsible for representing petitioner, as Ms. Ciampolillo and Ms. Chin-Caplan respectively represented 49.7% and 23.5% of the total fees requested by petitioner. *See* Pet'r's Appl. for Attorneys' Fees and Costs at 88, ECF No. 202.

"consistently nonspecific," providing examples "such as 'DRAFT email to expert,' or 'PHONE CALL with expert.'" *Id.* at *7. He faulted her for not providing the name of the particular expert, of several, with whom she had communicated, or "some information about the topic or purpose of the communication." *Id.*

The "secondary reason" for the Ciampolillo reduction was due to her efforts resisting a fact hearing the Special Master held to determine whether petitioner suffered a seizure at her pediatrician's office after receiving the vaccination. *Abbott*, 2017 WL 2226614, at *4, *7–8. Although two of petitioner's experts assumed that such a seizure occurred, petitioner's initial plan was not to have her mother or herself testify as to the event, but to rely on medical records "created much later" that contained their recounts of petitioner's medical history. *Id.* at *3.[4] The Special Master determined that testimony from percipient witnesses would be useful to determine how Mrs. Abbott reacted in her pediatrician's office after the vaccination, but petitioner opposed the introduction of these witnesses and refused to authorize communications to facilitate their testimony. *Id.* at *4.[5] The Special Master determined that this position was unreasonable and "without any basis," and therefore did not allow petitioner's counsel to be compensated for these activities. *Id.* at *7.

The reductions to Ms. Chin-Caplan's billed hours were made because the Special Master found "many entries" to be "vague." *Id.* at *6. Several merely read "Review file," and entries for meetings "do not identify the purpose or the topic of the meeting." *Id.* The Special Master concluded that "[t]he vagueness of these entries does not provide sufficient information to establish the reasonableness of the activity," and on that basis reduced the hours billed by ten percent. *Id.*

Petitioner has timely moved for review of the Special Master's decision, arguing that a portion of the reductions based on vagueness and baselessness were arbitrary and capricious and resulted from an abuse of discretion. *See* Pet'r's Mem. Supp. Mot. for Review at 12–33, ECF No. 213 (Pet'r's Br.). The Secretary of Health

---

[4] Initially, the allegation of this seizure was not based on witness testimony, but on the affidavit of petitioner's father, who stated that his wife said the seizure occurred. *Abbott*, 2017 WL 2226614, at *1. After the Special Master proposed a hearing on the subject, *see* Order (Apr. 11, 2013) at 2–3, ECF No. 109, petitioner's mother submitted her own affidavit, *see* Pet'r's Ex. 95, Aff. of Josephine Jocksberger, ECF No. 121-1.

[5] This proceeding resulted in the issuance of a Ruling Finding Facts. *Jocksberger v. Sec'y of Health & Human Servs.*, No. 10-485V, 2015 WL 6291671 (Feb. 10, 2015).

and Human Services has responded, arguing that the Special Master appropriately determined the amount of attorneys' fees awardable to petitioner. *See* Resp't's Mem. Resp. to Mot. for Review at 6–13, ECF No. 215 (Resp't's Br.). On October 4, 2017, the Court held oral argument on the motion.

## II. DISCUSSION

### A. Legal Standards

Under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 to 300aa-34 ("Vaccine Act"), whenever a petitioner is awarded compensation the special master "shall also award . . . an amount to cover . . . reasonable attorneys' fees, and . . . other costs." 42 U.S.C. § 300aa-15(e)(1). The Vaccine Act provides for review of a special master's decision, wherein the court may "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa-12(e)(2)(B).

The Federal Circuit has held that awards of attorneys' fees are to be reviewed under the abuse-of-discretion standard. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1356 (Fed. Cir. 2011) (citing *Pierce v. Underwood*, 487 U.S. 552, 558–63 (1988); *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993)). Under this standard, "only if [a tribunal] erred in interpreting the law or exercised its judgment on clearly erroneous findings of material fact, or its decision represents an irrational judgment in weighing the relevant factors can its decision be overturned." *Chiu v. United States,* 948 F.2d 711, 713 (Fed. Cir. 1991) (reviewing a non-vaccine decision to award attorneys' fees under the Equal Access to Justice Act). In general, "reversible error is 'extremely difficult to demonstrate' if the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision.'" *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (quoting *Hines ex. Rel. Sevier v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)).

### B. Analysis

In calculating an award of reasonable attorneys' fees, the Special Master reduced the hours billed by two of petitioner's attorneys. One, Ms. Ciampolillo, billed 355.8 hours for a total fee of $78,222.60. *See* Pet'r's Appl. for Attorneys' Fees and Costs at 88. This amount was reduced by 30%, down to $54,755.82. *See Abbott*, 2017 WL 2226614, at *8. The other, Ms. Chin-Caplan, billed a total of 107.8 hours

for a total fee of $36,924.80.  *See* Pet'r's Appl. at 88.  This request was reduced by 10%, down to $33,232.32.  *See Abbott*, 2017 WL 2226614, at *6.

Petitioner raises two objections to the Special Master's decision.  First, she argues that her attorneys acted appropriately in opposing a hearing that excluded medical expert testimony, and that the Special Master arbitrarily penalized them for zealously advancing her interests.  Pet'r's Br. at 12–18.  Second, she argues that it was arbitrary for the Special Master to reduce billed hours based on the vagueness of billing entries, contending that the entries were sufficiently detailed; that the Special Master did not adequately quantify these reductions; and that providing more detail concerning the subject matter of tasks could implicate the attorney-client privilege or the work-product doctrine.  *Id.* at 18–33.

### *1.  Fact Witness Testimony*

In objecting to the reduction for hours spent opposing the hearing concerning whether she suffered a seizure at her pediatrician's office, petitioner offers a number of justifications for her attorneys' efforts.  Petitioner argues that she did not want a hearing that did not also include medical expert testimony.  Pet'r's Br. at 13.  She explains that she did not wish to call the employees of that office as her witnesses because she suspected that their recollections would differ from those of her own fact witnesses and she needed therefore to cross-examine them.  *Id.* at 13–14.  Despite the narrow topic of the proceeding, petitioner did not want to authorize these employees of one of her health providers to speak with the Secretary's lawyers, because she did not want the latter to have "unfettered access" to the former.  *Id.* at 13.

Petitioner further maintains that the Special Master improperly penalized her counsel for zealous representation, when the Massachusetts Rules of Professional Conduct require such behavior.  *Id.* at 15 (citing MASS. R. PROF. C. Preamble & Rule 1.3).  And she argues that the Special Master interfered with her attorneys' ability to pursue their own legal strategy.  *Id.* at 16.  This, she contends, violates the "full and fair opportunity to present its case" guaranteed each party under Vaccine Rule 3(b)(2), and the "principles of fundamental fairness" that are required by Vaccine Rule 8(b)(1).  *Id.*

The Court is not persuaded that the Special Master abused his discretion in reducing petitioner's fees by the hours spent opposing the testimony of the employees of petitioner's pediatrician's office.  As the Secretary has pointed out, *see* Resp't's Br. at 7, under Vaccine Rule 8(c)(1) the Special Master had the discretion to "conduct an evidentiary hearing to provide for the questioning of witnesses," and

the "fundamental fairness" concept of Vaccine Rule 8(b)(1) "requires a search for the truth," *Boley v. Sec'y of Health & Human Servs.*, 82 Fed. Cl. 407, 413 (2008) (citations omitted). The Special Master explained that "the foundational predicate" for the opinions of petitioner's critical medical experts was "that she suffered a seizure after vaccination." *Abbott*, 2017 WL 2226614, at *3. Petitioners' counsel may have zealously sought to limit the evidence of this seizure to the intake histories she recounted to medical providers much after the fact, but such self-reported histories can have low probative value. *See Langland v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 421, 439–440 (2013) (noting the evidentiary problems of patient histories related to subsequent medical professionals by patients or their parents). The Special Master was, essentially, telegraphing to petitioner that he would have trouble finding the existence of this necessary predicate on the basis of such evidence, or on the affidavit from petitioner's father stating that his wife had told him that petitioner suffered a seizure. *See Abbott*, 2017 WL 2226614, at *1.

Under these circumstances, it was entirely appropriate for the Special Master to seek testimony from office staff present the day of the vaccination, in order to "search for the truth." *Boley*, 82 Fed. Cl. at 413. Special masters may use their prior experience in making fees determinations. *See Saxton*, 3 F.3d at 1521. And as the person who was "intimately familiar with all the facts before" him, *Hall*, 640 F.3d at 1356, the Special Master was in the best position to determine whether petitioner's counsel's efforts to resist the fact hearing were baseless and not reasonably compensable. Accordingly, the finding that the attorneys' fee award should not cover these hours cannot be set aside as an abuse of discretion.

### 2. *Vague Billing Entries*

The "primary reason" for the reduction in compensable hours billed by Ms. Ciampolillo, and the sole reason for the reduction concerning Ms. Chin-Caplan, was that the Special Master found many of their time entries to be too vague. *Abbott*, 2017 WL 2226614, at *6–8. Petitioner's chief argument against these reductions is that her counsel has submitted similar entries many times in the past without any reductions being made. Pet'r's Br. at 18–20. Petitioner's counsel's firm "has practiced exclusively in the Vaccine Program for decades and represented thousands of petitioners. Attorneys' fees at [petitioner's counsel's firm] have never been reduced due to vague billing entries." *Id.* at 18. Petitioner argues that because no change has been made to the billing practices, the Special Master's sudden decision that her entries are "too vague" is arbitrary and capricious and should be reversed. *Id.*

Petitioner relies on *Guerrero v. Sec'y of Health and Human Servs.*, where our court found that a special master had inadequately explained the reasons for his deductions, and required him to explain how he calculated his percentage reduction in attorney hours. Pet'r's Br. at 20–21 (citing *Guerrero*, 120 Fed. Cl. 474, 480–481 (Fed. Cl. 2015)). In that case, our court recognized that "decisions employing percentage reductions [should receive] 'heightened scrutiny,'" adding that there must be a "'concise but clear' explanation for reducing a fee award so that an appellate tribunal is able to assess whether there has been an abuse of discretion." *Guerrero* at 481 (quoting *Int'l Rectifier Corp. v. Sumsung Elecs. Co.*, 424 F.3d 1235, 1239 (Fed. Cir. 2005)). The problem there was that "[t]he Special Master did not identify any of the referenced 'multitude of tasks' or 'small incremental charges,' cite any instance of overbilling, or identify a time period when billing levels were inappropriate." *Id.* But in contrast, here the Special Master has identified a number of specific instances of vague entries, including specific citations to petitioner's fee application. *See Abbott*, 2017 WL 2226614, at *6–7. Furthermore, unlike in *Guerrero*, here the Special Master made a line-by-line analysis of the timesheets submitted by petitioner. *See id.* at *6. It would be unreasonable, however, to expect the Special Master to explain how each individual entry affected his final calculation, as in conducting fee determinations tribunals "need not, and indeed should not, become green-eyeshade accountants." *Fox*, 563 U.S. at 838.[6]

Petitioner further argues that the Special Master's decision to reduce the fee award based on vague billing entries was arbitrary and capricious because the billing entries in question fully complied with the Guidelines for Practice under the National Vaccine Injury Compensation Program (NVICP). Pet'r's Br. at 22 (quoting Guidelines for Practice under the NVICP § X, Chapter 1(A) (Rev. Apr. 2016)). Petitioner is mistaken to understand this language to be setting any sort of standard for specificity in billing entries, however. These guidelines merely explain the structure of attorney payment under the Vaccine Act --- they do not set minimum standards for fee awards.

---

[6] With the burden of establishing the reasonableness of an attorneys' fee request falling on petitioner's attorneys, if anyone should assume the role of "green-eyeshade accountants" it is they. But petitioner has failed to present in her motion for review her own estimate of the percentage of billing entries of Ms. Ciampolillo or Ms. Chin-Caplin which are of the sort the Special Master found impermissibly vague.

Much of Mrs. Abbott's concern with the Special Master's requirement of more specificity in billing records is that providing the topic of communications between attorneys and their clients or their expert witnesses could violate attorney-client privilege or divulge information protected by the work-product doctrine. Pet'r's Br. at 24–30. But in the context of a fee application under the Equal Access to Justice Act, the Federal Circuit held that the disclosure of general subject matter for billing entries could be done in a manner that did not violate the attorney-client privilege. *Avgoustis v. Shinseki*, 639 F.3d 1340, 1343–46 (Fed. Cir. 2011)). That case involved a reduction in compensable attorneys' hours due to billing entries strikingly similar to those found problematic by the Special Master, such as "'review[ed] client correspondence' or 'draft[ed] client correspondence.'" *Id.* at 1341. Petitioner has explained that the billing entry software used by her counsel maintains two sets of records, one for public consumption and the other containing internal communications regarding the entries. Pet'r's Br. at 24 n.23, 29 n.26. In future fee applications, it should not be difficult to supplement any vague entries with additional information from the latter, appropriately redacted to protect work-product and preserve privileged information.

Petitioner also argues that the missing information from billing entries found vague by the Special Master could be pieced together by considering other billing entries or other information pertaining to the case. *See* Pet'r's Br. at 31–33. But again, this would impose upon the Special Master the "green-eyeshade accountant" role from which he has been spared by the Supreme Court. *See Fox*, 563 U.S. at 838.

The Court finds that the Special Master did not abuse his discretion in making percentage reductions to the hours billed by two of Mrs. Abbott's attorneys. He sufficiently explained that these reductions were the result of his line-by-line analysis of the billing records, and were based on records he found to be vague. Even if petitioner's attorneys had been compensated based on similar records in the past, the burden falls on them to justify their fee application, and additional information can be relayed without divulging privileged information.

### III. CONCLUSION

For the foregoing reasons, petitioner's motion for review is hereby **DENIED** and the decision under review is **SUSTAINED**.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge